Carter v. McPherson.

---

No. 21,807.

L. O. CARTER, *Appellee,* v. MARY E. McPHERSON et al. (THE KANSAS CITY RAILWAYS COMPANY, *Appellant*).

SYLLABUS BY THE COURT.

1. ATTORNEY'S LIEN—*Construction of Statutes.*   Section 484 of the General Statutes of 1915, amending section 8 of chapter 11 of the General Statutes of 1868, authorizes an attorney's lien on money due the attorney's client and in the hands of the adverse party, in any "matter" in which the attorney was employed, as well as in any action or proceeding, the word "matter" in this connection meaning business or affair.

2. SAME—*Sufficient Notice of Lien.*   Notice of an attorney's lien, duly served, is adequate for the purpose, if it give information sufficiently definite and certain to enable the party served to protect himself in dealing with the attorney's client.

3. SAME—A notice of attorney's lien considered, and held to be sufficient.

4. SAME—*Suit Dismissed and Settled by Plaintiff—Lien Not Abated— Contract Contingent Fee Recoverable—Settlement Contract Prima*

*Facie Evidence of Amount.* In an action for damages for personal injury, the attorney for the plaintiff served notice on the defendant of an attorney's lien. Afterwards the plaintiff dismissed the action, without the attorney's knowledge or consent, and without cause for discharge on his part, and, through another attorney, commenced a second suit on the same cause of action. This suit was settled by the plaintiff for a sum of money which she received pursuant to the terms of a written contract of settlement with the defendant. The attorney claiming a lien had a contract with the plaintiff for a percentage of the amount recovered, by suit or by compromise, as his compensation. *Held,* the dismissal of the first suit did not abate the lien; the attorney's contract fixed the amount of his compensation, and he was not relegated to recovery on *quantum meruit;* and the contract of settlement established, *prima facie,* the amount of money due the plaintiff from the defendant.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed January 11, 1919. Affirmed.

*O. L. Miller, C. A. Miller,* and *R. J. Higgins,* all of Kansas City, for the appellant.

*David F. Carson,* and *L. O. Carter,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enforce an attorney's lien. The plaintiff recovered, and the Kansas City Railways Company, a substituted defendant, appeals.

On July 6, 1914, the plaintiff was employed by Mary E. McPherson to collect damages for personal injuries which she sustained in an accident on the Metropolitan Street Railway, operated by the receivers and subsequently purchased by the appellant. The plaintiff's compensation was fixed at a percentage of the amount recovered, either by suit or by compromise. On July 7, the plaintiff commenced an action in the district court of Wyandotte county to accomplish the purpose of his employment, and on July 8 served notice of an attorney's lien, which reads as follows:

"In the District Court of Wyandotte County, Kansas, Third Division. Mary E. McPherson, Plaintiff, v. Ford F. Harvey et al., Defendants. No. 2316-A.

Carter v. McPherson.

NOTICE OF ATTORNEY'S LIEN.

*"To the defendants and their attorneys of record:*

"You and each of you will hereby take notice that the undersigned, L. O. Carter, as attorney at law, has and claims a lien for a general balance of compensation as such attorney at law for professional services rendered by him for the above-named plaintiff, Mary E. McPherson, upon all moneys or property now in your hands belonging to the said Mary E. McPherson, plaintiff, and upon all moneys or property due or that may be adjudged due said plaintiff, in the above-entitled cause after due proceedings therein, or that which you may offer to pay plaintiff in settlement or compromise of the above-entitled suit.

"The amount which the undersigned claims as a general balance of compensation, and for which he claims a lien as aforesaid, is two thousand five hundred ($2,500.00) dollars.        "L. O. CARTER,
                                                        *"Attorney for Plaintiff."*

Afterwards the plaintiff interviewed his client, interviewed witnesses, consulted physicians, caused X-ray pictures of his client's injuries to be taken for use as evidence, and in other respects performed professional services in connection with the case. On January 7, 1915, the plaintiff's client dismissed her action, without the plaintiff's knowledge or consent. In September, 1914, the client, through another attorney, brought suit against the same defendants, on the same cause of action, in the circuit court of Jackson county, Missouri. In March, 1915, the plaintiff served another notice of lien on the attorney for the defendants in the Missouri action. In April, 1915, the client settled her case for a sum of money satisfactory to herself, which she received. The plaintiff sued for his percentage of the amount.

The defendant says the dismissal by the plaintiff's client of the suit brought by the plaintiff terminated the action and the matter with which the plaintiff was connected, and abated his lien. If this were true, the statute would be reduced to waste white paper.

Under the statute of 1868, an attorney's lien was confined to money and papers of the client in the attorney's hands, and to money due his client in the hands of the adverse party in any action or proceeding. The statute did not specify the kind of notice necessary to perfect a lien, or the manner of serving notice. (Gen. Stat. 1868, ch. 11, § 8.) In 1905 the statute was amended. The kind of notice and the manner of serving it were specified, and the word "matter" was inserted, so that an

attorney may now have a lien from the time of giving notice, on money due his client and in the hands of the adverse party, "in any matter, action or proceeding in which the attorney was employed." (Gen. Stat. 1915, § 484.) The word "matter" means, in this connection, business, or affair, and the purpose was to enlarge the lien to secure attorney fees without regard to whether or not action or proceeding were commenced.

In this instance, the matter which was the subject of the Wyandotte county suit—the claim for damages for personal injuries—existed from the time the injuries were sustained until the plaintiff's client was finally compensated. The plaintiff became connected with that matter when he was employed as an attorney to realize on the claim, and when he perfected his lien he could not be disconnected from it, so far as his lien was concerned, by anything his client or his client's adversary might do. In the absence of release, waiver, or forfeiture on his part, he could be disconnected by nothing except satisfaction of his lien.

The notice of July 8, printed above, is attacked. The statute gives a lien on "money due." In *K. P. Rly. Co. v. Thacher*, 17 Kan. 92, it was held, construing the statute of 1868, that the lien may be created when the claim is one for damages for personal injuries, unliquidated and undetermined by verdict or judgment. In the opinion it was said:

"This gives a lien not simply upon a judgment, but upon 'money due.' It does not specify for what the money must be due, nor limit the lien to any particular class of liability or form of action. Wherever an action is pending in which money is due, the attorney may establish his lien. And in an action, the verdict and judgment do not create the liability, do not make the 'money due.' They are simply conclusive evidence of the amount due from the commencement of the action." (p. 101.)

Apparently, the defendant would apply to the notice as strict rules relating to certainty as those which formerly governed the interpretation of common-law indictments for felony. Thus it is said that "all moneys . . . now in your hands belonging to the said Mary E. McPherson," cannot refer to "money due," and that subsequent phrases of the notice restrained the additional expression, "and upon all moneys . . . due . . . said plaintiff," strictly within the confines of the pending lawsuit. There is nothing technical about such a notice. All that is required is that the adverse party

shall be given information sufficiently definite and certain to enable him to 'protect himself in. dealing with the client. In this instance, "moneys . . . belonging" was a fair equivalent of "money due," and the reference to the pending suit merely identified the fund, without limiting the extent of the claim upon it.

It may be assumed that the dismissal of the Wyandotte county suit operated as a discharge of the plaintiff by his client. It was not claimed, however, that the plaintiff was discharged for cause. The answer pleaded that the plaintiff was not employed at all, but that issue was determined in plaintiff's favor. In proving the amount of his lien, the plaintiff offered in evidence the contract of settlement between his client and her adversary, and documents evidencing payment to her according to its terms. He offered no proof of the value of the services he actually rendered. It is contended that he was limited to recovery on *quantum meruit*.

Much water has gone by the judicial mill on this subject. (6 C. J. 724.) Some of it glided over the dam without doing any work. Some of it ground grist. Some of it turned wheels while hoppers were empty. The court will not undertake to discuss the many decisions. It is fairly committed by the decision in the Thacher case already referred to, which holds that in case of settlement before trial, the lien secures the contract fee when there is a contract, and that an instrument of settlement like that introduced in evidence *prima facie* establishes the amount which was due the client.

It is true that in Thacher's case the lien was for compensation for services of an alleged reasonable value, but the court was called on to declare the extent of an attorney's lien under the statute, and did so. The circumstances giving rise to the interpretation were stated as follows:

"May a defendant when sued in such an action [for damages for personal injury], and before trial and verdict, settle with the plaintiff, pay him a certain amount, obtain a release and satisfaction of the claim, and thus free himself from all further liability either to the plaintiff or to his attorney, notwithstanding such attorney has prior to the settlement given notice of a claim for a lien . . .?" (p. 101.)

In this instance, the fact that one action was dismissed, and another was commenced by a different attorney before the

settlement was concluded, does not affect the principle or the plaintiff's rights.

It is perfectly true that the relation of attorney and client is of such a delicate and confidential nature that an attorney may be discharged at any time, without cause on his part. But if the attorney have a contract for a specified compensation, the client cannot rid himself at will of the contract, too. In the case of *Detroit v. Whittemore*, 27 Mich. 281, the supreme court of Michigan, composed at the time (1873) of Cooley, Campbell, Christiancy, and Graves, announced the following principles, which this court believes to be sound:

"An attorney employed to carry a suit through for an agreed sum has a vested right to the compensation when he accepts and begins the service; and he cannot be lawfully deprived of it except by his own consent or through his own default or misconduct. If he is discharged from the employment before the service is completed, he may recover the whole sum." (p. 285.)

Contracts of employment may, of course, contain conditions which make these principles inapplicable; but the mere fact that the agreed compensation is a percentage of the amount realized on the claim which is the subject of the employment, is not such a condition. Thus, in the case of *Scheinesohn v. Lemonek*, 84 Ohio St. 424, an attorney was employed to collect an account for twenty-five per cent of the amount collected. The claim was taken out of his hands before he had time to make the collection. It was held that the attorney was entitled to sue for breach of the contract, and to recover his percentage of the face of the claim, on proof that it was collectible. In this instance the only contingency involved, realization on the claim for damages, had occurred before suit for the fee was commenced.

Some of the cases holding that the attorney's remedy is limited to *quantum meruit*, did so on the ground that if the client were to be bound by the contract with his attorney, he might be deterred from settling with his adversary, and public policy favors compromise of litigation. The antagonism between settling the case and paying the attorney is not easily grasped, but conceding that the client would hesitate to settle if obligated to pay his attorney the stipulated fee, the reasoning comes to this: To preserve intact the tender fabric of public

policy which favors compromise of litigation, the obligation of a contract, esteemed in some quarters as somewhat sacred, may be wrecked without scruple.

The court holds that the contract fixed the plaintiff's compensation, the stated percentage of the amount recovered by suit or by compromise; that the plaintiff's discharge without cause did not free the client from the obligation of the contract, or relegate the plaintiff to recovery on *quantum meruit;* and that the contract of settlement established, *prima facie,* by way of admission, the amount of money due the plaintiff's client from her adversary.

Several minor matters are given space in the briefs. They have been considered, and are not regarded as of sufficient importance to require special discussion.

The judgment of the district court is affirmed.