57 So.2d 605 (1952)
FISHMAN
v.
CONWAY.
No. 19798.
Court of Appeal of Louisiana, Orleans.
March 17, 1952.
Writ of Certiorari Denied June 2, 1952.
Charles L. Rivet, New Orleans, for plaintiff and appellee.
Frederick G. Veith, New Orleans, for defendant and appellant.
JANVIER, Judge.
Ralph H. Fishman, formerly a member of the law firm, Yarrut and Fishman, having been assigned by his former partner, Louis H. Yarrut, all of the latter's interest in the claim on which this action is based, brought this suit in the Civil District Court for the Parish of Orleans against defendant, Mrs. Gertrude Mollegan, widow of Edward John Conway, for services rendered in the succession of her husband, Edward John Conway.
The plaintiff alleged that early in the year 1945, Mrs. Conway employed the said firm to represent her in connection with her community and other interests which "were then involved in the succession of her deceased husband * * *." Plaintiff further alleged that the said firm, or one of its members, had rendered professional services to Mrs. Conway continuously from the date of the employment until May 5, 1948, and that "part of the services so rendered are reflected in record No. 259-653" of the Civil District Court. He also alleged that, in addition to the services reflected in the said record, the services further included "conferences with her, with auditors, with opposing counsel, and with others." Plaintiff then alleged that "on May 5, 1948, for good cause, said firm of Yarrut & Fishman withdrew as counsel for defendant." Then follows an allegation that the professional services of plaintiff's former firm, which were exerted in the Civil District Court on behalf of defendant, "were thereafter utilized in the Supreme Court as will appear from the brief filed on behalf of defendant" in the Supreme Court. Plaintiff also alleged that no agreement had been entered into *606 fixing the compensation of his former firm, and that the services rendered were well worth the sum of $1,500. Plaintiff also alleged that Benjamin Y. Wolf, another attorney who also had been counsel for defendant, "has waived and renounced all claims for compensation;" that the partnership of Yarrut & Fishman has been dissolved, and that plaintiff has acquired all of the interests of his former partner, Louis H. Yarrut.
To this petition Mrs. Conway filed an exception of no cause of action based on the contention that plaintiff had not alleged facts setting forth the reasons which prompted the plaintiff and his former law firm to discontinue its employment by Mrs. Conway, the argument being that an attorney has no right to abandon a matter entrusted to him by a client without just cause, and that, consequently, where such an abandonment is alleged, the attorney loses all right to a fee unless he also alleges facts which justify the abandonment.
This exception was overruled, and we think that this ruling was correct. All that is necessary to justify such an abandonment is that the attorney have just cause, and if the defendant in such a suit desires to have the plaintiff set forth in detail the facts which constituted the just cause, he should resort to an exception of vagueness, as a result of which, the District Court may require that the plaintiff allege such facts. An exception of no cause of action cannot be made to serve the purpose of an exception of vagueness.
After the exception was overruled, defendant filed answer, admitting the employment of Louis H. Yarrut in various matters from "about July 1944" until "on or about May 5, 1948." Defendant further admitted "that part of the services performed by Louis H. Yarrut are reflected in the record No. 259-653" of the Civil District Court for the Parish of Orleans.
In answer to the allegation that the firm of Yarrut and Fishman, "for good cause", on May 5, 1948, withdrew as counsel for defendant, defendant denied those allegations, but reserved the right "to object to the introduction of any testimony because the said paragraph is vague and indefinite." Defendant then alleged that in 1944 she had employed Yarrut to bring suit for defendant against her husband, but that before the suit could be tried, her said husband had died and that she then employed Yarrut to represent her in the succession proceedings of her said husband. She then alleged that she had paid to Yarrut $450 for legal services rendered in compromising certain insurance claims, and had also paid him $150 for services rendered in the divorce proceedings. We may say here that neither of those matters is in any way involved in this litigation. Defendant then alleged that Mr. Yarrut had withdrawn after judgment had been rendered in the Civil District Court in the succession proceedings and "at a time which was critical," and that he refused to deliver to the attorneys then engaged by her the memorandum of authorities he had prepared for the trial court.
After a trial on the merits there was judgment in favor of plaintiff, Ralph H. Fishman, and against Mrs. Conway for $1,000, with legal interest from judicial demand and for costs. Defendant has appealed, and plaintiff has answered the appeal praying that the amount awarded be increased to $1,500 as originally prayed for.
The contention of defendant, that plaintiff is entitled to no fee at all because his firm withdrew without just cause and at a critical time in the litigation, is entirely without foundation.
The record abundantly shows that Mrs. Conway made herself most obnoxious to her attorneys, to the court, to other members of the Bar, and had indicated plainly that she was dissatisfied with the services which were being rendered. She wrote a letter to the "Committee of Ethics and Grievance, Civil Court House Building, New Orleans, La.," in which she charged that "The lawyers and other people involved are now trying to take my home, furniture and other belongings from me. I feel and say that this action is confiscation." *607 There can be no question that an attorney may withdraw as counsel for a client if there is good cause for such withdrawal. In Vol. 7, C.J.S., Attorney and Client, § 110, page 943, appears the following: "* * * the attorney is justified in withdrawing on account of any conduct on the part of the client, during the progress of the litigation, which tends to degrade or humiliate the attorney, lower the standard of professional ethics, or destroy the reciprocal confidence required between attorney and client."
The same rule is stated in American Jurisprudence, Vol. 5, section 39, page 282: "* * * When, however, reasonable cause or sufficient reason exists, an attorney may, previous to the termination of the suit, terminate the relation without the consent of the client, upon giving reasonable notice; * * *".
In Dowling v. Peyroux, 12 La.App. 551, 126 So. 270, 271, we said: "We know of no reason, in the absence of a written agreement, which would prevent an attorney retiring from a case he had undertaken, or, for that matter, prevent his client from terminating his services; and, in the case of an attorney who retires without injury to his client's cause, after making several unsuccessful efforts to collect a fee, there is no reason why he should not be compensated upon the basis of a quantum meruit for the services which he has rendered."
Nor did the withdrawal take place at a critical time in the litigation. The case had been won in the Civil District Court and was pending in the Supreme Court awaiting fixing.
On the question of whether the withdrawal was justified and whether it took place at a critical time, the district judge said: "It is the opinion of this court that the plaintiff's former partner had ample reason to withdraw from this case, and the record discloses no proof whatever of the defendant's allegation that this withdrawal took place at a time that was critical."
The only question remaining is the value of the services which were rendered up to the time of the withdrawal.
Prior to the death of defendant's husband, he was a member of a partnership known as Edward J. Conway Company, composed of Edward J. Conway, Edna B. Condon and John George Miller. The articles of partnership provided that, in the event of the death of any partner, an account should be made up, a valuation placed upon the assets, and the amount due to the deceased partner should be paid by the surviving partners to the representatives of the deceased partner.
After the death of Conway, his succession was opened in the Civil District Court, an inventory was made, and the interest of Conway in the partnership was appraised at $6,655.77. Mrs. Conway was not satisfied with the appraisement, particularly for the reason that no valuation had been placed upon the good will of the partnership and, for the purpose of having this valuation increased so as to include the value of the good will, Mr. Yarrut and his firm were employed. As a result of their services in the Civil District Court, the value of the good will was fixed at $6,000, and since the interest of Mrs. Conway in the partnership was five-sixths thereof, her interest was increased by the sum of $5,000. An appeal was taken to the Supreme Court, and ultimately the Supreme Court fixed the value of the good will at $12,000.
The record convinces us that the legal question of whether the good will should be appraised and included as an asset of the partnership was the most important feature of that litigation, and it convinces us further, as it did the district judge, that the work of Mr. Yarrut and his firm was responsible not only for the judgment which was rendered by the district court, but was largely responsible for the increase which the Supreme Court ordered.
It is contended by defendant that the memorandum or brief prepared in the Civil District Court was not used when the matter was presented to the Supreme Court. On this question the district judge said: "This record shows that the work of the plaintiff's former partner and associates, *608 was taken advantage of and used by the defendant's attorneys."
The district judge also said: "A comparison of the briefs filed by defendant's attorneys in the Supreme Court (P-1, D-1) and the memorandum filed by the plaintiff's attorneys in the district court (P-5, D-2) shows that much of the material contained in plaintiff's memorandum was used in the defendant's attorneys' brief."
Mr. M. C. Scharff, an attorney called by the plaintiff as an expert to fix the value of the services rendered, said that in his opinion $1,000 would be a fair and reasonable charge.
A review of the record convinces us that this valuation is correct. Surely it is not excessive. However, in view of the fact that, as a result of the withdrawal, it was necessary that Mrs. Conway employ other counsel, we think that the amount awarded should not be increased.
Consequently, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.