REGAN, Judge.
Plaintiff, Daniel A. McGovern III, a practicing attorney of New Orleans, La., instituted this suit in quantum meruit against the defendant, Price T. Gilbert, his client, endeavoring to recover the sum of $8,000, representing the value of professional services he had rendered in effecting the re-zoning of about 9J4 [1] acres of defendant’s property from “A-Residential” to “F-Heavy Commercial”, fronting on Chef Menteur Highway in the City of New Orleans. Plaintiff asserts no fee during any period of his employment had been agreed upon, that the fee ultimately charged was reasonable; and in the alternative, plaintiff requests the court to determine the reasonable amount thereof.
Defendant answered and denied the value of the professional services rendered by the plaintiff, insisting that he was seeking in the final analysis a “J-Industrial” classification of his property; and as a special defense, he pleaded that this suit should be predicated on an oral fee contract which would limit his liability to less than $500.
From a judgment in favor of plaintiff for $3,000, defendant has prosecuted this appeal. Plaintiff answered the appeal [2] and *94 requested that the judgment be amended •by increasing it to the sum of $8,000.
The record reveals that on September 26, 1956, plaintiff visited the home of the defendant in connection with other unrelated business and upon the conclusion thereof, the defendant introduced into their conversation the subject of a recent zoning classification of his acreage fronting on the Chef Menteur Highway so as to obtain advice or information from plaintiff relative to the possibility of securing a more favorable re-zoning classification thereof. Plaintiff agreed to simply discuss the matter with the Director of the City Planning Commission so as to have the matter of re-zoning the acreage from “A-Residential” to commercial brought before the Commission. Plaintiff stated to defendant there would be no fee charged for this service. If, however, any additional work were agreed upon, a fee would be charged which would be commensurate with the time and effort involved and the success achieved. Defendant was most desirous of engaging the legal services of the plaintiff, and remarked : “The sky is the limit, I will back you up 100%, do whatever you can and I will see that you are paid,” so testified the plaintiff.
On October 2, 1956, plaintiff dictated a letter in the presence of the defendant and later sent him a copy thereof, wherein he had requested the Planning Commission to re-zone defendant’s property from “A-Residential” to “E-Commercial”. This request was refused. Thereafter plaintiff appeared before several meetings of the Commission and the City Council, always accompanied by' the defendant; after each refusal to change the zoning classification of the property, plaintiff asked defendant if he wished to continue these efforts as success appeared most unlikely. The defendant answered yes on each occasion.
Plaintiff testified that periodically their conversation would turn to the subject of a “fee”, and that he repeatedly informed the defendant that he could not be specific in connection therewith since he did not know how much work would be involved, and that defendant assured him he would pay whatever fee was ultimately charged.
On February 28, 1957, or about five months after the original request, the City Council unanimously [3] overruled the Commission’s recommendation and re-zoned 9J4 acres of defendant’s property from “A-Residential” to “F-Heavy Commercial”. Plaintiff described defendant as being “jubilant”, and he then asked the amount of the fee; plaintiff answered he would let him know, that it would be reasonable, though not a low fee. On March 11, 1957, plaintiff rendered his bill of $8,000, setting out in detail the work he had done, the results achieved, the enhanced value of the property which he estimated to be about $40,000 and suggested several alternative methods of payment.
Defendant refused to pay the bill, hence this suit.
On the trial hereof defendant testified that the classification of the property from “A-Residential” to “F-Heavy Commercial” was not what he desired since he was interested in leasing the land for mineral exploration, which required a “J-Industrial” classification. This testimony was adduced despite the fact that evidence had already been introduced showing that defendant actually knew the classification sought had been “E-Commercial”. Further, defendant acknowledged that no specific fee had been agreed upon, but insisted that he informed plaintiff he would not pay as much as “Nick and Nora” had paid to plaintiff for representing them on a re-zoning matter, which was $500. This assertion was emphatically denied by the plaintiff.
Plaintiff offered into evidence the expert testimony of one realtor, Clifford Probst, who estimated that the 9j4 acres had an *95 enhanced value of $47,720[4] as a result of the re-zoning. The defendant offered no expert testimony in rebuttal as to the enhanced value, but he did relate that he had been offered $75,000 for the whole of his property after the re-zoning, and that he had been unable to procure prospective purchasers prior thereto. Defendant also testified he had secured an appraisal of $70,-000 from the Central Appraisal Bureau in 1953 and in 1958, which was both before and after the re-zoning and therefore this would indicate that no enhanced value to the property had resulted from plaintiff’s efforts in obtaining a new classification thereof. However, it is pertinent to observe in connection with the credibility of the defendant that neither of these appraisals was offered in evidence to substantiate his testimony, especially, relative to the $70,000 appraisal of the property obtained in the year of 1953.
In order to establish the reasonableness of the fee charged, plaintiff also offered into evidence the expert testimony of Stanley McDermott, Jr. and George J. Hanlon, local attorneys who have had experience in connection with changing the zoning classification of real estate. McDermott asserted that the fee of $8,000 was “very, very, very reasonable” in view of the plaintiff’s work and success.
Hanlon related he thought a reasonable fee would be $5,000 based solely on the plaintiff’s efforts, without regard to the enhanced value of the property.
Defendant neither cross-examined these witnesses nor offered similar experts, both to rebut the foregoing testimony or to enlighten the court.
Plaintiff insists that the fee is reasonable in view of the effort involved, the results achieved, the enhanced value of the property and the ability of the defendant to pay.
Defendant on the other hand maintains that the new classification is of no value to him, that his liability should be limited to $500 in conformity with what he considered to be an oral contract, and that his financial status should not be considered in evaluating the fee.
The foregoing evidence reveals that only questions of fact were posed for the trial court’s consideration. The trial judge thereof found as a fact that no oral contract had been confected and that $3,000 was a reasonable fee.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We have carefully reviewed the record and concur in the finding of the trial judge that there was no verbal contract. Plaintiff related. that he generally charged a substantial fee for a single appearance before the Planning Commission, so it would appear most unreasonable to believe that he had agreed to a maximum fee of $500, irrespective of the number of appearances before the Commission or the Council and the effort involved.[5] The record also reveals that the defendant is a man skilled in business transactions and undoubtedly knew that $500 was insufficient monetary inducement to secure the services of the plaintiff, who was both experienced and successful in re-zoning matters. Further, the only testimony inscribed in the record relative to the existence of an oral contract emanated from the defendant.
The task of evaluating the fees for legal services rendered by an attorney to' his client is a matter of great delicacy, and a court in fixing them must be guided by a conscientious estimate of their value.[6] *96 Some of the elements to be considered are the extent and nature of the services rendered; the effort, time, and trouble involved ; the results achieved; the character and importance of the matter; the amount of money involved; the learning, skill and experience exercised; the difficulty of the legal problems,[7] the enhanced value of the client’s property,[8] and the ability of the debtor to pay.[9] In this case, as in all others, expert opinion provides a very essential and necessary guide to the court in reaching a just conclusion; even though in this instance the judge thereof did not follow the experts’ recommendation as to the amount of the fee.
We have considered all of the foregoing elements in our deliberations and are therefore of the opinion that the fee of $3,000 as fixed by the trial court is in the last analysis reasonable and fair.[10]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The defendant owned approximately 49.4 acres and about 9% acres were re-zoned •which encompassed 800 feet frontage on the Chef Menteur Highway by a depth of about 500 feet.

. Plaintiff endeavored through the medium of an affidavit to introduce new evidence in this court which, of course, was refused.

. Five members thereof were present.

.At the conclusion of the trial in the lower court the judge thereof stated, in effect, that he would discount this testimony in fixing the fee of the plaintiff.

. McClendon v. Chryssoverges, 1929, 10 La.App. 639, 120 So. 520.

. Dinkelspiel & Hart v. Pons, 1907, 119 La. 236, 43 So. 1018.

. Interstate Trust & Banking Co., 1958, 235 La. 825, 106 So.2d 276.

. Fishman v. Conway, La.App.1952, 57 So. 2d 605.

. Wilson v. Henderson, La.App.1939, 191 So. 602; Dowling v. Centanni, La.App. 1937, 174 So. 396.

. Woodville & Woodville v. Thomas, 1926, 3 La.App. 266.