(663 P.2d 663)
No. 54,638

DONALD V. MADISON, *Claimant,* v. GOODYEAR TIRE AND RUBBER COMPANY, *Respondent,* and TRAVELERS INSURANCE COMPANY, *Insurance Carrier.*

Opinion filed May 12, 1983.

*Frank D. Taff,* pro se, appellant.

*C. Keith Sayler,* of Fisher, Patterson, Sayler & Smith, of Topeka, for appellee Reginald LaBunker.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

MEYER, J.: The title to this case is confusing in that the only parties who will be affected by the decision herein are appellant Frank D. Taff, an attorney, and appellee Reginald LaBunker, also an attorney. This is because the sole issue herein involves the amount of attorney fees to which each of the aforementioned parties is entitled.

The facts from which this appeal arose are not in dispute.

Donald V. Madison (claimant) was employed by Goodyear Tire and Rubber Company (respondent). He sustained an injury while on the job. On March 5, 1980, claimant first consulted with Frank D. Taff (Taff) concerning his injury. At that time, claimant was already receiving compensation for temporary total disability. Taff subsequently determined that claimant had a valid workers' compensation claim. On March 14, 1980, he and claimant entered into a written employment contract which provided generally for a 25 percent contingency fee arrangement.

Taff's records reflect that prior to entering into the contract, he spent five (5) hours consulting with claimant and researching the case. After that date, he kept no record of time expended on claimant's behalf. Nothing in the record indicates that Taff did anything tangible to advance the claimant's workers' compensation claim between March 14, 1980, and January 1981.

In January 1981, claimant's temporary total disability compensation was terminated. Taff thereupon demanded the immediate reinstatement of same; in addition, he filed an application for hearing. During the months of January and February, 1981, Taff also corresponded with respondent's attorney regarding possible settlement of the claim; these negotiations proved fruitless.

On March 2, 1981, claimant discharged Taff as his attorney. Taff notified the administrative law judge of this fact by letter on March 6, 1981. Taff's letter also informed the administrative law judge that he would continue to assert a claim for 25 percent of any settlement or award that claimant might ultimately obtain. Also on March 2, 1981, claimant retained the services of Reginald LaBunker (LaBunker). This employment, like that of Taff, was pursuant to a written contract specifying a 25 percent contingency fee.

In his prosecution of claimant's case, LaBunker filed an amended application for hearing, as well as an application for

preliminary hearing. The latter was held on March 31, 1981; a request for temporary total disability compensation was denied at that hearing. On July 16, 1981, LaBunker conducted the deposition of Dr. Robert R. Payne.

On October 27, 1981, the administrative law judge issued an award for 30 percent loss of use of claimant's right arm, at a rate of $148 per week for 63 weeks—a sum of $9,324. This amount, coupled with temporary total loss of use for 75 weeks at the same rate, made the total award $20,424. Claimant was also awarded $28.24 in medical expenses; additionally future medical treatment, as necessary, and the resultant expenses were also granted without further application. No appeal was taken from this award, and it was statutorily approved by the director of workers' compensation.

On December 4, 1981, Taff corresponded with the director, asserting his claim for 25 percent of the aforementioned award, and requesting a hearing on this claim pursuant to K.S.A. 44-536(h). Such a hearing was conducted on February 12, 1982. On April 5, 1982, the administrative law judge awarded Taff $400 in attorney fees for his representation of claimant. This award was based on eight hours of work at $50 per hour. The balance of the 25 percent of claimant's award was set over to LaBunker. Taff immediately sought review by the director, who sustained the decision of the administrative law judge in all respects. Taff then appealed this decision to the district court; that court also adopted and affirmed the findings and conclusions of the administrative law judge. The instant appeal to this court followed.

The sole issue on appeal is whether the trial court erred in its award, which apportioned the attorney fees in this case between Taff and LaBunker.

Taff avers that the director patently erred in awarding to him only $400 in attorney fees in connection with his representation of claimant. He asserts a right to a full 25 percent of claimant's eventual recovery, based on his contract for employment. He places reliance on the body of law which holds that an attorney's right to recover fees for his services is governed by the contract with his client unless that contract is champertous, unreasonable or otherwise unenforceable; under this body of law, the attorney is not limited to recovery based on quantum meruit. See *Grayson v. Pyles,* 184 Kan. 116, 118, 334 P.2d 341 (1959). According to

Taff's arguments, this general rule has not been altered by adoption of the workmen's compensation act. Therefore, he argues, the director wrongly disregarded the contract between claimant and himself, which called for a contingency fee of 25 percent, and erred in awarding a fee based solely on an hourly sum for time expended.

The workmen's compensation act contains certain prescriptions and proscriptions in regard to attorney fees in cases under that act. To summarize a few of these, all fee arrangements must be pursuant to a written contract; contingency fee arrangements may not exceed 25 percent of the recovery; no fees shall be recoverable with respect to any award for medical expenses (with exceptions); and no fees shall be recoverable in connection with compensation for temporary total disability (with exceptions). See K.S.A. 44-536(a) through (g).

The workmen's compensation act also contains a provision for the resolution of disputes concerning attorney fees. That provision is found at K.S.A. 44-536(h), which provides:

"Any and all disputes regarding attorneys' fees, whether such disputes relate to which of one or more attorneys represents the claimant or claimants or is entitled to the attorneys' fees, or a division of attorneys' fees where the claimant or claimants are or have been represented by more than one attorney, or any other disputes concerning attorney's fees or contracts for attorneys' fees, shall be heard and determined by the director, after reasonable notice to all interested parties and attorneys."

It was under this statute that the trial court approved the apportionment of fees which is the crux of this appeal.

K.S.A. 44-536(h) contains no substantive pronouncements to guide the director in apportioning fees among two or more attorneys who have represented the same claimant. Neither is there a case construing 44-536(h) in a factual setting similar to the one at bar. This case presents, then, what is technically a question of first impression. There are, however, certain rules of law regarding attorney fees in general which would seem analogous to cases involving attorney fees in proceedings under the workmen's compensation act.

In 7A C.J.S., Attorney and Client § 289, p. 536, it is stated that an attorney is generally entitled to the reasonable value of his services actually rendered when his employment relation with his client is prematurely terminated. In the same section, the rule is more specifically applied to situations where a contingency fee arrangement is involved.

"An attorney who is discharged before the occurrence of the contingency provided for in a contingency fee contract may not, generally, recover his compensation on the basis of the contract, but he may recover, in quantum meruit, the reasonable value of the services which he has rendered." 7A C.J.S., Attorney and Client § 289, p. 538.

There are several Kansas cases which at first glance might appear to depart from this rule. See *Bryant v. El Dorado National Bank,* 189 Kan. 486, 370 P.2d 85 (1962); *Sowers v. Robertson,* 144 Kan. 273, 58 P.2d 1105 (1936); and *Carter v. McPherson,* 104 Kan. 59, 177 Pac. 533 (1919). Taff has cited some of these in his brief, and he urges this court to adopt as the rule in Kansas that an attorney may always recover in full under a contingency fee contract, and is never subject to recovery only under quantum meruit.

Such a rule is not supported by logic or reason; nor is it mandated by legal precedent. Upon closer inspection, the cases cited above are distinguishable from the one at bar. In each of them, the operative contingency had occurred prior to the discharge of the attorney. In such a situation, full recovery as per the contingency fee arrangement is logical and justified. In a case such as this one, though, where the occurrence of the contingency has not been realized prior to the attorney's discharge, the rule from C.J.S., stated above, seems far more fair and proper. We hereby adopt that statement of the rule for application in this state.

This court would also direct attention to the case of *In re Phelps,* 204 Kan. 16, 459 P.2d 172 (1969), *cert. denied* 397 U.S. 916 (1970), where the court stated the following rule:

" '. . . where the contract of employment is for a stipulated fee but their [the attorneys'] services are dispensed with before the conclusion of the litigation or other professional work for which they were engaged, the client is bound to pay what the services performed are reasonably worth.' " 204 Kan. at 24, citing *Shouse v. Consolidated Flour Mills Co.,* 132 Kan. 108, Syl. ¶ 3, 294 Pac. 657 (1931).

The court in *Phelps,* at p. 25, also cited, with approval, 7 C.J.S., Attorney and Client §§ 168, 169, which is in essence the rule from 7A C.J.S., Attorney and Client § 289 stated above. While *Phelps* and *Shouse v. Consolidated Flour Mills Co.* involved employments for stipulated amounts rather than contingency fee arrangements, the rule and reasoning therein apply equally to

those situations where a contingency fee arrangement has been agreed upon, but the contingency has not been realized prior to the attorney's discharge by his client. ·

The issue in this appeal is actually one of statutory construction. It involves the scope of the director's power and authority when resolving disputes over attorney fees, pursuant to K.S.A. 44-536(*h*).

"The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute." *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs*, 228 Kan. 595, 597, 618 P.2d 1176 (1980).

This general statement was amplified in *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.*, 224 Kan. 357, 367, 582 P.2d 1123 (1978).

"In determining legislative intent, courts are not limited to a mere consideration of the language employed, but may properly look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effect the statute may have under the various constructions suggested. [Citations omitted.]"

It has long been the rule in Kansas that the workmen's compensation act is to be liberally construed in favor of compensation to the injured worker.

"The court is firmly committed to the rule of liberal construction of the workmen's compensation act in order to award compensation to the workman where it is reasonably possible to do so, and to make legislative intent effective and not to nullify it." *Brinkmeyer v. City of Wichita*, 223 Kan. 393, Syl. ¶ 1, 573 P.2d 1044 (1978).

Being a part of that act, the provisions found at 44-536(*h*) must be subjected to this same liberal construction.

To allow two or more attorneys, each of whom has represented a single claimant at various stages of the proceedings before the division of workers' compensation, to each collect a contingency fee of 25 percent of the compensation awarded that claimant would substantially reduce, if not totally eradicate, his recovery. This would not be in furtherance of the liberal construction in favor of compensation noted above, but would be in conflict with it. Thus, to advance the legislative intent underlying the act, we hold that when resolving disputes under 44-536(*h*), the director of workers' compensation has the power and discretion to ap-

portion fees in a reasonable and proper manner, considering the particular circumstances of each case.

Given that the director has such power and discretion, the question remains whether his actions in the case at bar were a reasonable and proper exercise thereof. A proceeding was held on February 12, 1982, to determine the validity of Taff's claim to 25 percent of claimant's award. Appearing and testifying at that proceeding were Taff, LaBunker, and James E. Benfer, attorney for respondent.

Taff stated that he worked five (5) hours on claimant's behalf prior to the signing of the employment contract on March 14, 1980. After that date, he no longer kept records of time expended on claimant's case, and was thus unable to accurately substantiate same. He did describe what he did after March 14, 1980: he did medical research into claimant's condition; he filed an application for hearing; and he notified the administrative law judge and respondent of his claim to a lien on 25 percent of any recovery claimant might eventually make. He also processed a social security claim for claimant, but acknowledged being paid in full for that work. He further indicated that he personally charged clients at the rate of $55 per hour.

LaBunker testified that he first consulted with claimant, after which he filed an amended application for hearing and an application for preliminary hearing; that he appeared at the preliminary hearing on behalf of claimant; that he did medical research; and that he deposed Dr. Payne. He stated that nothing supplied to him by Taff aided him in his representation of claimant.

Mr. Benfer testified as an expert in the field of workers' compensation. He expressed his opinion that Taff could not have expended more than eight hours in his representation of claimant. He also concurred to a statement that $50 per hour was a reasonable charge for attorneys in the field of workers' compensation at the time involved.

From the foregoing, it appears that the trial court's decision to apportion the total fees of $2331, where Taff received $400, and LaBunker, $1931, was supported by substantial evidence of record. It was also a logical method of apportionment. Taff has received fair remuneration for his time and efforts, and neither claimant's award nor respondent's liability were in any way affected by this apportionment. If any party has been aggrieved,

it is LaBunker; he has received a contingency fee of only 20.71 percent of claimant's recovery, on a contract calling for a 25 percent fee, in a case in which he, by his own testimony, had to start from scratch.

We express no opinion as to whether LaBunker was entitled to a full 25 percent of claimant's award; he has not appealed the apportionment as it applies to him, and so that issue is not before us. Neither by our holding herein do we mean to imply that we can conceive of no situation where a claimant who has been represented by two or more attorneys might ultimately be held liable for attorney fees in an aggregate amount exceeding 25 percent of his recovery. The resolution of this question, too, must await a case in which such issue is squarely presented.

We are not persuaded by Taff's argument that because his fee was determined not by percentage, but by an hourly rate, LaBunker's fee should have been determined in a like manner. In LaBunker's case, the contingency which was a condition precedent to payment based on a percentage of claimant's award had occurred; in Taff's case, it had not. This difference in their situations justifies the difference in the methods used to compute their respective fees.

Having found no abuse of discretion, we affirm the district' court's award.

Affirmed.