Sandra Jean SUTTON, Plaintiff,

v.

SUBARU OF AMERICA,
INC., Defendant.

No. 88–1402–K.

United States District Court,
D. Kansas.

Aug. 1, 1991.

James L. Grimes of Cosgrove, Webb & Oman, Topeka, Kan. and Mikel L. Stout, Foulston & Siefkin, Wichita, Kan., for plaintiff.

William G. Haynes, Topeka, Kan., for claimant Eidson, Lewis, Porter & Haynes.

1. Eidson, Lewis has subsequently dissolved. The interests of the former firm are currently represented herein by William G. Haynes, chairman of the firm's dissolution committee.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Both plaintiff Sandra Jean Sutton and her former attorneys Eidson, Lewis, Porter & Haynes [1] of Topeka, Kansas, have moved for summary judgment in the present dispute over legal fees. On May 2, 1986, Sutton was seriously injured when the 1979 Subaru in which she was a passenger burst into flames after an accident. Eidson, Lewis contends that both Sutton (who turned 18 some two months after the accident) and her mother entered into a binding contingency fee contract with Charles McAtee, an Eidson, Lewis partner for legal representation in an action against Subaru.

The matter came before the court by oral argument on July 29, 1991. At that time, the court indicated its intended findings. For the reasons addressed by the court at the hearing of the present matter, and as further discussed herein, the motion for summary judgment filed on behalf of Eidson, Lewis is hereby denied, while the motion filed on behalf of Sandra Sutton is granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the non-moving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita* ). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Under the contingency fee contract, Sutton allegedly agreed to pay the Eidson, Lewis firm 25% of any favorable settlement reached prior to filing suit, 33⅓ of any subsequent settlement, 40% of any jury verdict award, and 45% of any award upheld on appeal. Eidson, Lewis bases its claim of a binding contingency fee contract on several contacts between McAtee and Sutton and her mother following the accident. McAtee avers that on numerous occasions he explained the terms of the contingency fee contract in detail, and that neither Sutton nor her mother ever expressed any objection or reservation about the proposed contract. However, the parties never entered into a written agreement reflecting the contingency fee contract. On June 29, 1988, over two years after the accident and McAtee's first involvement in the case, McAtee presented Sutton with a written version of the contingency fee contract for her signature. The proposed written agreement presented to Sutton contains blank entries for her to sign the agreement and indicate the date: "this —— day of June, 1988."

Sutton did not sign the agreement in June, or thereafter. In her response to the Eidson, Lewis motion for summary judgment, and in support of her separate motion for summary judgment, Sutton cites the affidavits of herself, her mother, and her uncle. These affidavits deny the existence of any discussion of a contingency fee contract prior to June 29, 1988.

In addition, it should be noted that although Eidson, Lewis refers to the written agreement presented to Sutton in June, 1988 as merely "memorializ[ing] the terms" of the alleged oral contingency fee contract (Eidson, Lewis motion, at ¶ 22), the proposed written contract, in fact, makes no reference to any prior oral agreement. Rather, the proposed written agreement and the contingency fee provisions contained within it take the form of promises phrased solely in the present (June, 1988) tense.

The directly conflicting versions of the oral discussions between McAtee and the Suttons prevent allowing the Eidson, Lewis motion for summary judgment. That motion, both as to its claim of a binding oral contingency fee contract and its subsidiary claim which would estop Sutton from denying the existence of the contract, depends upon the existence of McAtee's explanation of the details of the contract's provisions and Sutton's assent to or at least acquiescence in those provisions. Sutton and her family, however, expressly deny the existence of any discussion relating to a proposed contingency fee prior to June 29, 1988. Faced with this controversy, summary judgment in favor of Eidson, Lewis may not be awarded on the grounds claimed.

■ The motion for partial summary judgment filed on behalf of Sandra Sutton, however, will be granted. Even assuming the existence of the prior oral discussions between McAtee and the Suttons, and in-

deed assuming further that these discussions created a valid contingency fee contract, the recovery available to Eidson, Lewis is nonetheless limited to *quantum meruit.*

Sutton presents two arguments in support of her motion: first, that an oral contingency fee contract, if it existed, was void as a violation of public policy; and second, that the contract was in any event terminated in October, 1988. The court finds that the second, though not the first, issue provides sufficient support for granting Sutton's motion for partial summary judgment.

Sutton contends that the purported oral agreement violates Model Rule of Professional Conduct 1.5(d), which provides in part that "[a] contingent fee agreement shall be in writing." This rule, however, was not adopted in Kansas until March 1, 1988, when the Kansas Supreme Court adopted the Model Rules of Professional Conduct pursuant to its Rule 226. This occurred some time after the time in which an oral contract, if any, would have formed between Sutton and Eidson, Lewis.

As a general rule, where a contract is legal at the time of its formation, a subsequent change in the law will not affect the validity of the contract. *Memphis & L. R.R. Co. v. Railroad Com'rs,* 112 U.S. 609, 5 S.Ct. 299, 28 L.Ed. 831 (1884); *Town of Koshkonong v. Burton,* 104 U.S. 668, 26 L.Ed. 886 (1881). Nor is there any indication in either MRPC Rule 1.5(d) or Kan. S.Ct.Rule 226 that the requirement that the contingency fee contract be in writing was intended to apply retroactively to contracts then in existence.

However, even though the contract (if it existed) was not void as illegal, it was nonetheless terminated when Sutton terminated the lawyer-client relationship and obtained other counsel. Upon the termination of the relationship prior to obtaining a favorable result, the recovery available to Eidson, Lewis is limited to *quantum meruit.* Under Kansas law, when an attorney engaged pursuant to a contingency fee contract is discharged prior to the designated contingency, the attorney cannot recover on the basis of the contract, but may, by *quantum meruit,* recover the reasonable value of his services. *Madison v. Goodyear Tire & Rubber Co.,* 8 Kan.App.2d 575, 663 P.2d 663 (1983). *See also In re Phelps,* 204 Kan. 16, 459 P.2d 172 (1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 922, 25 L.Ed.2d 97 (1970).

Eidson, Lewis attempts to distinguish *Madison* and *Phelps,* noting that the former involved a workers' compensation matter, while the latter involved not a contingent, but a stipulated fee. These distinctions have no bearing on the issue here. That the attorney in *Madison* was engaged to represent a client in a workers' compensation case is wholly irrelevant. The court of appeals resolved the case on the basis of general principles relating to attorney client relations, and did not depend on unique aspects of Kansas workers' compensation law. *See Madison,* 8 Kan.App.2d at 578–579, 663 P.2d 663 (quoting 7A C.J.S., Attorney and Client, § 289, at 538).

And, while the contract at issue in *Phelps* involved a stipulated rather than a contingent fee, the ultimate conclusion is directly applicable here: when an attorney's contract with a client provides for a given fee, and the attorney is discharged prior to the accomplishment of the task designated in the contract, the attorney's recovery cannot be measured by the contract, but rather must be determined on the basis of what the services actually performed were reasonably worth. *See Phelps,* 204 Kan. at 24, 459 P.2d 172.

The reliance by Eidson, Lewis on the early case of *Carter v. McPherson,* 104 Kan. 59, 177 P. 533 (1919) is misplaced. As the court of appeals recognized in *Madison,* earlier decisions such as *Carter* do not establish that an attorney with a contingency fee contract is guaranteed recovery under the contract, and can never be compelled to accept *quantum meruit* as a basis for recovery.

Such a rule is not supported by logic or reason; nor is it mandated by legal precedent. Upon closer inspection, the cases cited above are distinguishable from the one at bar. In each of them,

the operative contingency had occurred prior to the discharge of the attorney. In such a situation, full recovery as per the contingency fee arrangement is logical and justified. In a case such as this one, though, where the occurrence of the contingency has not been realized prior to the attorney's discharge, the rule from C.J.S., stated above, seems far more fair and proper.

8 Kan.App.2d at 579, 663 P.2d 663.

IT IS ACCORDINGLY ORDERED this 1 day of August, 1991, that the motion for summary judgment of Eidson, Lewis (Dkt. No. 88) is hereby denied, and the motion for partial summary judgment of Sandra Sutton (Dkt. No. 93) is hereby granted. The matter is now set over for a status conference on the remaining issues herein on the 16th day of September, 1991, at 11:30 A.M.