(885 P.2d 1270)
No. 71,127

WILLA B. TUCKER, *Plaintiff*, v. RIO OPTICAL CORPORATION, *et al.*, *Defendants*. (Thomas DeCoursey and Pieter A. Brower, *Appellants*, and J.R. Russell and John H. Fields, *Appellees*.)

—

Opinion filed December 9, 1994.

*Thomas DeCoursey*, of Kansas City, Kansas, and *Pieter A. Brower*, of Kansas City, Missouri, appellants pro se.

*David Carson*, of Carson & Fields, of Kansas City, for the appellees, and *John H. Fields*, appellee pro se.

Before BRISCOE, C.J., GERNON, J., and ROBERT H. MILLER, Chief Justice Retired, assigned.

BRISCOE, C.J.: Thomas DeCoursey and Pieter Brower (appellants), plaintiff's original attorneys, appeal the order of the district court denying their application for an apportionment of attorney fees between themselves and J.R. Russell and John Fields (appellees), plaintiff's subsequent attorneys, who obtained a settlement of plaintiff's claim.

The sole issue presented is whether attorneys who withdraw from a case for good cause are entitled to a portion of the fees from a settlement obtained by successor attorneys upon a showing by the withdrawing attorneys that they provided legal services to the plaintiff that contributed to the settlement obtained. We reverse the district court's ruling that withdrawal for good cause would not entitle appellants to share in the attorney fees obtained from the settlement, and remand for a factual determination of whether appellants withdrew for good cause and, if so, what portion of the $16,000 attorney fee amount should be paid to appellants.

Appellants were the original attorneys representing plaintiff Willa Tucker in her medical malpractice action. They entered into a contingent fee contract under which they were to receive one-third of any recovery and 40 percent if the case was settled within 30 days of trial. The action was filed in January 1991 and was first set for trial in November 1992. During this period, appellants performed substantial legal work for their client. They found experts, conducted discovery, opposed motions for summary judgment, and prepared for trial.

Appellants had not received any significant settlement offers from the defendants, due in part to the fact that Tucker was a difficult client. She had unrealistically high expectations about the amount she could recover, refusing to entertain any realistic settlement even after the trial judge explained to her the statutory limits on recovery in malpractice actions. She demanded that appellants offer the trial judge a bribe or she would get a different attorney, and she accused appellants of being in conspiracy with the trial court and defense counsel. As a result of Tucker's conduct, DeCoursey sent a letter to Tucker on October 14, 1992, stating:

"If you think a conspiracy exists between all of the parties then I strongly urge you to hire additional attorneys to represent you. Mr. Brower and I will withdraw from the case as soon as we can. I do not want to represent you if you believe what you are saying. If you are playing some kind of mental game with me then this game must end now. I do not find it amusing. I find it insulting and destructive.

Please let me know immediately if you want to have new attorneys to represent you in this matter."

Tucker did not answer, and on October 21, 1992, appellants moved to withdraw as attorneys of record, citing permanent and irreconcilable differences that caused "destruction of the lawyer/client relationship." The trial judge expressed displeasure that DeCoursey moved to withdraw so close to the scheduled trial date but signed an order permitting immediate withdrawal after the circumstances were explained.

Tucker then retained appellees to represent her. They entered into a contingent fee contract under which appellees would re-

ceive one-third of any recovery. There was no agreement to split the fees with appellants and several months after withdrawing, appellants filed an attorneys' lien, claiming expenses of $6,971.34 and attorney fees of $45,000. Appellees had advised appellants to file the lien to insure that Tucker would pay their out-of pocket expenses, but they did not expect an additional lien for $45,000 in attorney fees.

Appellees negotiated a settlement of $55,000 on the morning of the scheduled trial. Tucker received $32,000, leaving the attorneys $23,000. Appellants applied for approval of their expenses and a division of the attorney fees. Appellees did not dispute appellants' entitlement to expenses and offered an additional $2,000 for their time, although appellees did not concede appellants were entitled to any payment for their services. Appellants claimed they were entitled to expenses and one-half of the $16,000 attorney fee portion of the settlement.

At the evidentiary hearing, local personal injury lawyers gave conflicting testimony on whether it was the local custom and practice to split fees in similar situations. The trial court ruled that appellants were entitled to $6,971.34 in expenses but denied their application for a division of fees. Because Tucker had not testified, the court would not make findings of fact on the circumstances of the withdrawal.

The trial court did not make findings of fact but decided the fee issue as a matter of law. The court held that even if the appellants' factual claims concerning the reasons for their withdrawal were true they were not entitled to a portion of the fees. Accordingly, as the issue presented is an issue of law, this court is not bound by the trial court's decision but is free to look at the issue anew. See *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986).

Much of appellees' argument is based on the incorrect assumption that the trial court made a finding of fact that appellants had no cause to withdraw. It is clear from the record that the trial court made no finding of fact on whether there was cause for withdrawal. The court simply ruled that appellants' account of the circumstances of the withdrawal, if true, did not entitle

them to any fees. The court indicated that appellants' account, if true, would establish cause for permissive withdrawal under ethical rules but would not establish that appellants were constructively discharged by Tucker.

In *Madison v. Goodyear Tire & Rubber Co.*, 8 Kan. App. 2d 575, 578-80, 663 P.2d 663 (1983), this court stated that an attorney working under a contingent fee contract who is *discharged* before any money is recovered is entitled, under quantum meruit, to the reasonable value of the services rendered. The general rule elsewhere is that attorneys who *withdraw* for good cause before completion of matters for which they were retained are entitled to compensation for their services. See 1 Speiser, Attorneys' Fees § 4:11 (1973); Annot., 88 A.L.R.3d 246 § 2; 7 Am. Jur. 2d, Attorneys at Law § 262; 7A C.J.S., Attorney and Client § 291. This rule also applies when the attorney was working under a contingent fee contract. *E.g., Phelps Steel Inc. v. Von Deak*, 24 Mass. App. 592, 511 N.E.2d 42 (1987); *Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 237 N.W.2d 520 (1975); *International Materials v. Sun Corp.*, 824 S.W.2d 890 (Mo. 1992). The rationale for the rule is apparent as it insures an attorney will be at least partially compensated for services rendered when forced to withdraw from a pending case as a result of forces beyond the attorney's control.

The trial court erred in ruling as a matter of law that appellants were not entitled to any fees. The trial court assumed, without finding, that appellants' description of Tucker's conduct was accurate. The conduct attributed to Tucker included her demand that appellants bribe the judge, her unrealistic expectations of recovery, and her resulting accusations of conspiracy against appellants. This conduct, which the court assumed to be true, would establish good cause for withdrawal. Although no appellate court in Kansas has directly addressed this question, courts in other jurisdictions have held that attorneys who have withdrawn as a result of similar client conduct are entitled to compensation for their services. *E.g., Mutter v. Burgess*, 87 Colo. 580, 290 Pac. 269 (1930); *Fishman v. Conway*, 57 So. 2d 605 (La. 1952); *Phelps Steel*, 24 Mass. App. 592; *Matarrese v. Wilson*, 202 Misc. 2d 994,

118 N.Y.S.2d 5 (1952). Therefore, if there is an evidentiary basis to conclude appellants' withdrawal was for good cause, they are entitled to compensation for their services upon a showing that their services contributed to the settlement obtained by appellees.

This case is remanded for further proceedings to determine whether appellants did in fact have good cause to withdraw. If the trial court finds they had good cause to withdraw, they should be compensated for the reasonable value of their services. See *Madison*, 8 Kan. App. 2d at 578-80. Appellants sought only one-half of the $16,000 obtained under appellees' contingent fee contract. Accordingly, if the court first determines appellants had good cause to withdraw, the court should then determine appellants' share of the $16,000 based upon the extent to which their work contributed to the settlement obtained by appellees.

Reversed and remanded for further proceedings.