No. 70,779

In the Matter of DAVID M. JANCICH, *Respondent.*

(877 P.2d 417)

Opinion filed July 8, 1994.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Frank M. Rice,* of Schroer, Rice, P.A., of Topeka, argued the cause for the respondent, and respondent was on the brief pro se.

*Per Curiam:* This original proceeding in discipline was filed by the office of the Disciplinary Administrator against David M. Jancich, of Overland Park, an attorney admitted to the practice of law in the State of Kansas. The formal complaint filed against respondent alleges violations of MRPC 1.15 (1993 Kan. Ct. R. Annot. 299); 3.4 (1993 Kan. Ct. R. Annot. 318); 8.1 (1993 Kan. Ct. R. Annot. 344); and 8.4 (1993 Kan. Ct. R. Annot. 347); and Supreme Court Rule 207 (1993 Kan. Ct. R. Annot. 170). Respondent filed an answer denying violations of the Model Rules of Professional Conduct.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on October 13, 1993. Respondent appeared pro se.

The complaint against respondent involved the sum of $7,500, which Edward Macan, the complainant, paid to respondent as either a loan or for respondent to hold until Macan's post-divorce proceedings were completed. Respondent and Macan were friends, and respondent occasionally had done legal work for Macan. In late January or early February 1990, respondent entered his appearance on behalf of Macan in his divorce action. Macan testified that, on the advice of respondent, he cashed in the contingent value rights of Marion Laboratories stock for approximately $21,000. According to Macan, respondent then advised him to place $7,500 in respondent's trust account for the purpose of concealing that amount of assets from the court when it computed his child support obligation. Macan gave respondent a

check in the amount of $7,500. Respondent deposited it in his business account.

Respondent testified that he asked to borrow money and Macan agreed to lend it to him. Respondent told Macan he would pay back $500 a month. The loan was interest free.

Respondent testified that he prepared a promissory note, but he did not produce it for the panel. Macan denied that there was any written documentation of the transfer other than the $7,500 check.

Macan testified that he had made many requests for repayment but that respondent still owed him $4,500. Respondent testified that health problems prevented him from making timely payments but that he had repaid some of the money. He did not produce for the panel any record of what he had repaid. On approximately June 1, 1992, in response to Macan's certified letter demanding repayment, respondent wrote to Macan, stating, "I would suspect that all funds will be available within the next two weeks." That was the last contact Macan had from respondent.

Macan's complaint was investigated by Tom Mitchelson. The following account was given by Mitchelson at the hearing: Respondent told Mitchelson that Macan gave him $7,500 for an unsecured real estate investment in Manhattan with a man named Dwight Miller. Respondent did not produce any documentation of the transaction. Respondent told Mitchelson that he would have Miller get in touch with him, but Miller never did.

Respondent denied Mitchelson's account. Respondent testified that he had told Mitchelson "that Dwight Miller had some land in Manhattan, Kansas, that he was hoping to sell, and that when that land sold, that another note was going to get paid for that I do have an interest in and that I was going to pay Mr. Macan."

Jack Ford, investigator for the Disciplinary Administrator's office, located Dwight Miller in Overland Park. In talking with Ford, Miller said that he had some real estate in Manhattan but that respondent was not involved. Miller also denied that he had ever made any investments with respondent or been involved in any loan transactions with him.

Miller, who is an accountant, testified that both respondent and Macan are his clients. Miller denied ever being involved with respondent in a business transaction or venture.

Mitchelson testified about a number of verbal and written requests to respondent for records, information, and assistance in the investigation which went unanswered.

The panel found that the following facts were established by clear and convincing evidence:

"2. The Respondent had represented one Edward Macan for a number of years.

"3. In either late December, 1989, or early January, 1990, Edward Macan and the Respondent had a conference in regard to $7,500.00 which was from a sale of stock or stock rights in Marion Laboratories. At that time Edward Macan gave the Respondent $7,500.00 to be placed in the Respondent's Trust Account. The said sum of $7,500.00 was not placed in the Respondent's Trust Account.

"4. The Respondent used the said sum of $7,500.00 for payment of various office bills and perhaps other bills.

"5. As of the date of the hearing, the Respondent had paid a portion of the said sum of $7,500.00 back to Edward Macan. At the time of the hearing there was still a balance due from said $7,500.00 of approximately $4,500.00. There was no Promissory Note in connection with said sum of $7,500.00

"6. The Respondent had never loaned one, Dwight Miller, any funds in connection with real estate in Riley County, Kansas.

"7. The Respondent failed to fully assist the Disciplinary Administrator and the Disciplinary Administrator's Investigator, Jack Ford, in the investigation in this matter.

"8. The Respondent was not candid in his statements to Jack Ford, the Disciplinary Administrator's Investigator, and Thomas P. Mitchelson of the Johnson County Ethics Committee."

The panel made the following conclusions of law:

"1. Model Rules of Professional Conduct 1.15 provides in part as follows: '(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the State of Kansas.'

"2. MRPC 8.1 provide[s] as follows: 'Rule 8.1 Bar Admission and Disciplinary Matters: An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person

to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

"3. Rule 207 of the Kansas Supreme Court requires that all members of the bar assist the Disciplinary Administrator in investigations and such other matters as may be requested of them.

"The panel finds that the Respondent violated all of the above rules."

The panel recommended indefinite suspension, stating:

"At 4.12 of Page 27 of the 1991 Edition of *Standards For Imposing Lawyer Sanctions* of the American Bar Association, there is the following: '4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.'

"It is the recommendation of the Panel that the Respondent be indefinitely suspended from the practice of law by the Kansas Supreme Court."

The respondent filed exceptions to the report of the hearing panel. He contends that the transaction was a loan and all the evidence before the panel was consistent with his contention. He denies that he failed to cooperate with the investigators in their investigation of this complaint.

In *In re Keithley*, 252 Kan. 1053, 1055, 850 P.2d 227 (1993), we restated the standard of review when this court considers a disciplinary matter:

" '[A]lthough the report of the disciplinary board "is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." [Citation omitted.]' *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993)."

This court must examine the record and determine for itself the proper discipline to be assessed against a respondent.

Here, the panel's finding that the transaction between respondent and Macan was not a loan is "amply sustained by the evidence." We do not agree with respondent that the evidence "is consistent with the nature of the transaction being a loan." Respondent did not produce a promissory note or any documentation that the transaction was a loan. Respondent did not claim the transaction was a loan until the disciplinary proceedings were formally initiated. He told Thomas Mitchelson, the investigator,

that the $7,500 was invested with a man named Dwight Miller in a Manhattan real estate transaction. As pointed out by the Disciplinary Administrator, if the transaction was a loan, respondent was required by MRPC 1.8(a) (1993 Kan. Ct. R. Annot. 282) to have the transaction reduced to writing and advise Macan to seek independent advice. Respondent failed to do so.

At oral argument before this court, counsel for respondent stated that he had been contacted by respondent very recently and only two days before oral argument agreed to represent him in this proceeding. Counsel indicated respondent suffers from severe depression and alcohol dependence. Counsel requested an extension of time to formulate and submit a specific plan for respondent to receive treatment and continue to practice law under supervision of a local attorney or attorneys.

We note that respondent failed to present any evidence to the panel that he suffered from depression or alcohol dependency nor did he submit a specific plan for medical treatment and supervision of his practice. Although this court considers mitigating factors in assessing discipline, such matters should be presented at the hearing before the panel and not for the first time at oral argument before this court.

The court, having considered the record, concurs in the findings of fact, conclusions of law, and recommendation of the panel that respondent be indefinitely suspended.

IT IS THEREFORE ORDERED that David M. Jancich be and he is hereby indefinitely suspended from the practice of law in the State of Kansas.

IT IS FURTHER ORDERED that respondent comply with the provisions of Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187), that he pay the costs of this proceeding, and that this opinion be published in the Kansas Reports.