No. 76,658

In the Matter of KEVIN C. HARRIS, *Respondent.*

934 P.2d 965

Opinion filed March 14, 1997.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*James C. Trickey*, of Overland Park, argued the cause and was on the brief for respondent.

*Per Curiam*: This is an original disciplinary proceeding filed by the office of the Disciplinary Administrator against Kevin C. Harris, an attorney admitted to the practice of law in Kansas. The subject matter of this proceeding, a fee dispute with Debbie Gerhardt (the complainant), also precipitated a civil suit, see *Gerhardt v. Harris*, 261 Kan. 1007, 934 P.2d 976 (1997). The hearing panel of the Kansas Board for Discipline of Attorneys found that Harris violated MRPC 1.15 (1996 Kan. Ct. R. Annot. 302) (removing disputed fee funds from his trustee account for his own use), MRPC 1.4 (1996 Kan. Ct. R. Annot. 270) (failing to properly communicate with client), MRPC 1.16(a)(3) and (d) (1996 Kan. Ct. R. Annot. 310) (delaying notification to the insurance company of his termination and by continuing to work towards a settlement after his client terminated him), and MRPC 1.5(a) (1996 Kan. Ct. R. Annot. 276) (charging an unreasonable fee) and recommended that Harris be disciplined by published censure and ordered to make restitution by paying $3,094 of the insurance settlement proceeds to Gerhardt. Harris filed exceptions to the panel's report. Our jurisdiction is under Rule 212 (1996 Kan. Ct. R. Annot. 217 [attorney discipline]).

The question for resolution is whether we should adopt the findings and recommendation of the panel. We find that the panel's findings are supported by clear and convincing evidence and adopt the findings and conclusions. We modify the recommendation by imposing a harsher degree of discipline.

## FACTS

The facts are well stated in the panel's findings, paragraphs 2 through 9, provided below:

"2. Respondent was retained by Complainant, Debbie Gerhardt, to represent her in a personal injury case against an insured of American Family Insurance Company arising out of an automobile accident. By written contingent fee agreement, Complainant agreed to pay Respondent 40% of the amount she recovered in the case.

"3. While the personal injury case was pending, Complainant Gerhardt received a summons to appear for nonpayment of rent and failure to vacate. She contacted Respondent about the eviction notice and process and provided Respondent with the court date. As the court date neared, Respondent did not return Complainant's telephone calls and failed to appear in court on the date set, purportedly because of car trouble. After the case was continued, Complainant made several calls to the Respondent which were not returned.

"4. In November 1991, Claimant terminated the representation by Respondent in both the personal injury and eviction cases, all because of her difficulty in communicating with him. Notwithstanding such termination, Respondent continued to negotiate with the insurance company for a settlement. In spite of repeated requests by the Complainant, Respondent failed to give the insurance company written notice of his termination until May of 1992, which delay prevented the Complainant from dealing directly with the insurance carrier.

"5. Because of a lien asserted by Respondent, the responsible insurance company was unwilling to settle with the Complainant even though an agreement for a policy limit settlement in amount of $25,000.00 had been tentatively agreed upon. The Respondent claimed a lien in amount of $4,000.00 based upon 25% of an assumed net recovery, after medical expenses, of $16,000.00. The Complainant believed the claimed attorney fees to be excessive and sought the assistance of the Disciplinary Administrator's Office. Assistant Disciplinary Administrator Stanton Hazlett was successful in negotiating an agreement with the Respondent that the fee dispute would be submitted to the Johnson County Fee Dispute Committee for resolution which was confirmed in correspondence both to and from the Respondent.

"6. As part of the agreement negotiated by Mr. Hazlett, the sum of $4,000.00 was to be credited to the Respondent's trust account pending resolution of the fee dispute and the remaining settlement funds were to be paid directly to the Complainant by the insurance company.

"7. Following the rule of *Madison v. Good Year Tire & Rubber Co.*, 8 Kan. App. 2d 575 (1983), the Johnson County Fee Dispute Committee found that Respondent was entitled to an attorney fee based upon quantum meruit in amount of $900.00 (10 hours at $90 per hour) plus $6.00 in out of pocket expense prior to his termination. Notwithstanding his earlier agreement that the Johnson County

Fee Dispute Committee would resolve the fee dispute, Respondent refused to be bound by the Committee's decision.

"8. Following Respondent's refusal to abide by the resolution of the Johnson County Fee Dispute Committee, litigation followed in the District Court of Johnson County, Kansas [*Gerhardt v. Harris*, No. 94 C 175, appeal docketed as No. 73,863 and decided this date]. Such litigation is still unresolved, the last decision of the trial court indicating that ownership of the disputed fee funds is still in dispute and that the court recommends that Respondent keep the money in his trust account pending final resolution of the dispute. Respondent has nonetheless removed the money from his trust account and used the same to pay his personal expenses.

"9. The complaint contains allegations of conflict of interest (MRPC 1.7, 1.8), which allegations were not proven by clear and convincing evidence."

Harris' exceptions to the panel's findings are conclusory. Each of the panel's findings is amply supported by the Disciplinary Administrator's exhibits and testimony of witnesses at the hearing.

The Disciplinary Administrator emphasized some additional facts presented at the hearing but not included in the report. Gerhardt initially complained to Deputy Disciplinary Administrator Stan Hazlett when she could not get Harris to send a letter to American Family Insurance Company (American Family) stating that he no longer represented her in her personal injury claim, which complaint was docketed for investigation as Case No. B5419. Attorney J. Nick Badgerow, at the request of the Disciplinary Administrator, investigated the complaint. A probable cause finding was made that MRPC 1.16 had been violated and Harris should be informally admonished. Hazlett communicated the result of Badgerow's investigation to Harris. Harris requested a formal hearing. Hazlett had many conversations with Harris after that. Hazlett explained to Harris the reasons for the informal admonishment recommendation in his letter dated January 29, 1993, *i.e.*, Harris' delay until May 27, 1992, in providing the letter to the insurance company that he no longer represented Gerhardt, and then only after Badgerow's request.

By March 1993, Gerhardt had negotiated a policy limits settlement of $25,000 with American Family, but American Family was uncertain how to distribute the proceeds, in view of Harris' attorney lien. Hazlett then negotiated what he thought was an agree-

ment between Gerhardt and Harris that Gerhardt would receive the settlement proceeds directly from the insurance company, less $4,000 to be deposited in Harris' trust account, and the parties would be bound by the Fee Dispute Committee's determination on entitlement to the $4,000. After Harris deposited the $4,000 in his trust account, Hazlett contacted Gerhardt in April 1993 and asked her if, in view of the agreement on resolving the fee dispute, she would be satisfied if B5419 was dismissed. She agreed to that, and the complaint was dismissed.

In February 1994, Hazlett learned that Harris had refused to abide by the Fee Dispute Committee decision and had taken no steps to resolve the matter with Gerhardt. Hazlett contacted Harris by letter and informed him that he intended to have the matter re-docketed. Harris replied that he had taken no action because he was waiting 2 years, "upon research and seeking counsel." Gerhardt refiled her complaint.

## DISCUSSION

Rule 212(f) provides:

"The recommendations of the Panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the Panel or the Disciplinary Administrator." 1996 Kan. Ct. R. Annot. 219.

See *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993), summarizing our responsibility in an attorney discipline case.

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Rule 211(f) (1996 Kan. Ct. R. Annot. 215).

"Clear and convincing evidence is not a quantum of proof but rather a quality of proof. . . . It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." *Ortega v. IBP, Inc.*, 255 Kan. 513, Syl. ¶ 2, 874 P.2d 1188 (1994).

We turn now to the panel's code violation findings.

### MRPC 1.15—Safekeeping Property

Harris' February 24, 1993, letter to Carrie Huffman of American Family said that Harris would deposit the $4,000 received from

the insurance company in his trust account *"pending a decision as to my appropriate fee by the Johnson County Bar Fee Dispute Committee or waiver by Ms. Gerhardt."* (Emphasis added.) After the committee's decision, Harris refused to pay Gerhardt any of the money. During cross-examination at his disciplinary hearing, Harris admitted that he had already spent the $4,000, relying on "advice of counsel," after the district court granted his motion for summary judgment against Gerhardt in the civil case.

The reason the district court granted summary judgment was that it determined that Hazlett's testimony establishing the agreement between Harris and Gerhardt to submit the $4,000 fee dispute to the Fee Dispute Committee for resolution was excluded under Rule 223 (1996 Kan. Ct. R. Annot. 242). The summary judgment did not resolve the fee dispute between Harris and Gerhardt, but merely disposed of Gerhardt's claim that Harris had agreed to be bound by the Fee Dispute Committee's determination, because of lack of admissible evidence to prove that claim. We have reversed the district court's summary judgment ruling on that issue and remanded for trial. See *Gerhardt v. Harris*, 261 Kan. 1007.

During the pendency of the civil case, Harris deposited $3,094 with the clerk of the district court. There was no requirement that he do so, as the civil case was not an interpleader action. Later, after the district court entered summary judgment in favor of Harris, he moved for return of the funds. The district court ruled that the funds should be returned to Harris, but stated:

"In weighing the equities in the present case, this Court hereby determines that the funds retained by the court clerk can be withdrawn by defendant. *Because the ownership of the funds is still in dispute, this court recommends that defendant return the money to his trust account. This court would again emphasize the fact that this decision does not reach the merits of the ownership of the funds,* but rather examines the disposition of the funds in relation to the above captioned case." (Emphasis added.)

Harris' claim of ownership of the disputed $3,094 was never resolved. The fact that Harris voluntarily deposited with the court the funds later returned to him without adjudication did not establish ownership. In addition, Gerhardt never waived her claim for the $3,094.

Harris' use of the $3,094, even after the district court ordered that the clerk return those funds to him, violated MRPC 1.15.

### MRPC 1.4—Communication

Gerhardt testified that between July 8, 1991 and November 1, 1991, she or her mother called Harris' office at least 10 times to see what was going on with her personal injury case. Harris did not return those calls. Gerhardt needed money because she faced eviction from her apartment, she had two children to support, and she was having problems with her medical bills. Gerhardt did not have a telephone, but her mother did. Gerhardt lived down the street from her mother. During that time, Harris did not send Gerhardt any correspondence regarding anything he had done on her case. Although Harris sent American Family a notice of an attorney's lien dated July 31, 1991, against any settlement proceeds on Gerhardt's personal injury claim, he never provided a copy of that notice to Gerhardt.

Harris' brief includes as an attachment his letter dated May 11, 1992, to Badgerow during the initial stages of the investigation of Gerhardt's disciplinary complaint against Harris and before Hazlett's negotiation of the fee dispute resolution between Harris and Gerhardt. This letter was not provided to the panel. Harris' brief highlights those portions of the letter in which Harris claims that he promptly returned Gerhardt's calls, but had difficulty reaching her because she did not have a telephone and could only be contacted through her mother. Harris testified at the hearing that he saw Gerhardt during the July 8-November 1, 1991, period on three or four occasions when she accompanied her sister to court for a criminal case in which Harris was representing her sister. He claims to have kept Gerhardt informed about her case on those occasions. He also said that he had called Gerhardt's mother at least once trying to return Gerhardt's calls. Gerhardt's sister, testified that she told Harris that Gerhardt was dissatisfied with the way he was communicating.

A violation of MRPC 1.4 has been established.

### MRPC 1.16—Declining or Terminating Representation

The panel's finding was based on Harris' delay in notifying the

insurance company of his termination and by continuing to work towards a settlement after his client terminated him.

Gerhardt discharged Harris as her attorney on the personal injury claim by telephone and letter on November 15, 1991. Gerhardt sent Harris another letter dated December 11, 1991, discharging him after she learned that he told American Family he was still representing her. American Family refused to deal with her directly, so long as Harris represented her. In the second letter, she requested that Harris inform American Family "at once" that he no longer represented her and that he file his lien claim. (She was not aware a lien letter had been sent to American Family much earlier.) American Family did not receive anything in writing from Harris saying that he no longer represented Gerhardt until his letter dated May 27, 1992. Interestingly, Harris' letter to American Family said that he had not represented Gerhardt "since December 15, 1991." Harris' May 27, 1992, letter left open the issue of the amount of his lien claim.

During his direct examination at the hearing, when asked if he had notified American Family that he was not representing Gerhardt, Harris testified:

"A. She sent me the letter and I tried to get ahold of her and I couldn't do that and I got ahold of Mr. Huffman [of American Family] and I wanted to know where we were on the thing to see if the possibility would exist that we could go ahead and get the thing settled at that time. I mean, Ms. Gerhardt was still in treatment at that time. But if there was a possibility then of just paying off and being done with it, that's what I wanted to find out. And yes, I did—I'm not sure when, but yes, I did tell the insurance carrier that I was no longer representing her."

Harris admitted attempting to negotiate a settlement of Gerhardt's personal injury claim with American Family after he received her letter of discharge. He also admitted failing to send American Family his letter acknowledging the discharge until May 1992—although he claims to have verbally told American Family that he no longer represented Gerhardt some time before that. Even his May 1992 letter states the discharge date was a month later that it actually was.

Relying on discovery documents in the civil case not included in the record for the disciplinary hearing, Harris argues that Gerhardt's claim was not yet ripe for settlement during this time frame because she was still undergoing medical treatment for her injury and her lost wages claim was being verified. Harris' explanation does not excuse his failure to promptly comply with Gerhardt's request to notify American Family of his discharge. Harris frustrated Gerhardt's efforts to deal directly with American Family after his discharge and failed to "take steps to the extent reasonably practicable to protect a client's interests." MRPC 1.16(d).

The June 28, 1993, ruling of the Fee Dispute Committee states the following:

"Mr. Harris further stated that in November of 1991 he thought the case could be settled in the $15,000.00 range and he was in the preliminary stages of negotiating this settlement with the insurance adjuster when Ms. Gerhardt discharged him. Ms. Gerhardt states she was not advised by Mr. Harris of these negotiations nor had she given him the authority to settle the case in that range. After being discharged, Ms. Gerhardt negotiated settlement for policy limits of $25,000.00."

Harris' post-discharge efforts to settle Gerhardt's claim were against her interests.

Harris' conduct establishes violations of MRPC 1.16(a)(3) and (d).

## MRPC 1.5—Fees

The panel found that Harris' fee claim of $4,000 was unreasonable, in violation of MRPC 1.5(a).

Gerhardt negotiated and settled her personal injury claim with American Family for the policy limits of $25,000 over a year after discharging Harris as her attorney. At the hearing before the Fee Dispute Committee, Harris sought the full contingency amount of 40 percent of Gerhardt's recovery. Alternatively, Harris claimed the $4,000 as an accord and satisfaction. Harris said that he had worked 10 hours on the case before his discharge, interviewing Gerhardt, investigating claims against the Kansas City police, taking photos, gathering Gerhardt's medical bills, and contacting the American Family claims adjuster. Harris' regular hourly rate was $90 per hour. The Fee Dispute Committee rejected Harris' claims

for the 40 percent contingency and for accord and satisfaction. The Committee found that Harris' February 24, 1993, letter to American Family and Hazlett's April 13, 1993, letter to Gerhardt showed Harris' agreement that the Committee was to resolve his claim on the $4,000 held in his trust account. Based on quantum meruit recovery under *Madison v. Goodyear Tire & Rubber Co.*, 8 Kan. App. 2d 575, 579, 663 P.2d 663 (1983) (" 'An attorney who is discharged before the occurrence of the contingency provided for in a contingency fee contract may not, generally, recover his compensation on the basis of the contract, but he may recover, in quantum meruit, the reasonable value of the services which he has rendered.' " [Quoting 7A C.J.S., Attorney and Client § 289, p. 538.]), the Committee decided that Harris was entitled to $900 plus expenses of $6 from the $4,000 in Harris' trust account, and that Harris should pay Gerhardt the balance, $3,094.

Citing the factors set forth in MRPC 1.5(a), Harris argues that his work on Gerhardt's personal injury claim involved substantial risk and difficulty. According to Harris, Gerhardt was a passenger in a car in which the driver was attempting to elude Kansas City, Missouri, police. The car struck a pole, injuring Gerhardt. The driver was intoxicated. Gerhardt also wanted Harris to investigate a potential claim against the police for her injuries, besides her claim against the driver. Harris lists several other reasons why this claim involved risk: (1) his suspicion that Gerhardt had a substance abuse problem; (2) Gerhardt's being a suspect in a drug case involving her sister; (3) Gerhardt's demanding and belligerent nature; (4) potential contributory negligence defenses; (5) choice of forum issues; (6) complexities of an investigation against a municipality; and (7) various liens by Gerhardt's health care providers. Gerhardt was also intoxicated on the night of the accident, according to medical records. For substantiation, Harris cites to the record in the civil case, which was neither presented to the panel at the time of the hearing nor included in the record in the disciplinary proceeding. He did provide documentation to the panel concerning the drug case against Gerhardt's sister.

Even assuming Harris had properly substantiated the above risk factors, Harris fails to show how any of these factors adversely

affected the likelihood of successfully resolving Gerhardt's personal injury claim. American Family did not deny coverage. Although Harris told the Fee Dispute Committee he spent 10 hours on the claim, the only documentation in the disciplinary proceeding record of Harris' activities is his July 31, 1991, attorney's lien letter to American Family.

The quantum meruit rule is especially applicable here because Gerhardt, without hiring a second attorney or filing suit, successfully negotiated a settlement of her claim for an amount $10,000 greater than Harris thought her claim was worth at the time she discharged him.

Harris argues Missouri law should apply to the issue of the reasonableness of his fees in this disciplinary case because the personal injury claim accrued in Missouri and the insurance company was located in Missouri. No matter where the personal injury claim accrued, however, both Harris and Gerhardt are Kansas residents, and the contingent fee contract was entered in Kansas.

Harris cites *Saucier v. Hayes Dairy Products, Inc.*, 373 So. 2d 102 (La. 1979), as supporting a rule that when an attorney is prematurely discharged on a contingent fee contract without cause, the amount fixed in the contract should be the proper frame of reference for fixing compensation, not quantum meruit. (Harris' suggestion of entitlement for fees of up to $10,000 contradicts his February 24, 1993, letter to American Family that $4,000 from the settlement proceeds would be deposited in his trust account, pending resolution of the fee dispute by the Fee Dispute Committee.)

*Saucier* is distinguishable in that it involved an attorney discharged without cause 3 years after filing suit on his client's personal injury claim. The appellate court ordered that the 1/3 contingency fee be shared between the discharged attorney and the successor attorney who settled the case, based on the services rendered by each. Here, Gerhardt settled her claim pro se without any suit being filed.

Harris also relies on *Carter v. McPherson*, 104 Kan. 59, 177 Pac. 533 (1919), and *Bryant v. El Dorado National Bank*, 189 Kan. 486, 370 P.2d 85 (1962), cases involving contingent fee attorneys discharged without cause. *Bryant* and *Carter* are also factually distin-

guishable. The evidence presented to the panel showed that Harris was discharged for failing to communicate with his client and he received timely notice of his discharge from his client. He had taken little action to advance her claim beyond filing his attorney's lien with the insurance company. Although Harris disputes that his discharge was for cause, Gerhardt testified as to his lack of action and her difficulties in communicating with him. His efforts to negotiate a settlement with American Family without Gerhardt's knowledge and after she had discharged him may have breached the contingent fee contract, as well as ethics rules. The contract provided: "It is expressly understood that settlement of my case or cases will not be effected without my consent."

The ABA/BNA Lawyers' Manual on Professional Conduct (1997) provides at p. 41:2012:

> "The overarching rule is that when a lawyer is discharged by the client for any reason—or withdraws for good cause—before the completion of the representation, the lawyer loses the right to recover the compensation set forth in the fee agreement and instead becomes entitled to the reasonable value of his services to the time of discharge or withdrawal. This quantum meruit rule has gained increasing support among the courts as being consistent with the rule that a client has an absolute right to discharge his lawyer, with or without good cause, at any point in the representation. The client would be deterred from exercising this right if he were required to pay the full amount of the contractual fee despite having discharged his attorney."

The ABA/BNA Lawyers' Manual further provides at p. 41:922: "Moreover, something less than a quantum meruit fee is appropriate for a lawyer who is discharged by the client for good cause, although total forfeiture is not necessarily called for."

Even assuming Harris was discharged without cause, the most he should be entitled to is quantum meruit compensation. The Fee Dispute Committee gave Harris the benefit of the doubt when it decided he was entitled to $906, based on his time spent on the file. Harris' insistence on $4,000 as his fee was unreasonable and in violation of MRPC 1.5(a).

### Disqualification of Disciplinary Administrator

Harris argues that because of Hazlett's close involvement in the fee dispute, this matter should have been referred to a special

disciplinary prosecutor. Harris references MRPC 3.7 (1996 Kan. Ct. R. Annot. 330) and MRPC 1.10 (1996 Kan. Ct. R. Annot. 292) and also cites *Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 897 P.2d 104 (1995), and *In re Habeas Corpus Petition of Hoang*, 245 Kan. 560, 781 P.2d 731 (1989), *cert. denied* 494 U.S. 1070 (1990).

MRPC 1.10, which concerns conflict of interest disqualification situations that arise because of an attorney's association with a firm or when an attorney moves from one law firm to another, is irrelevant. Harris does not contend that Hazlett has ever represented Harris. He claims that Hazlett gave legal advice to Gerhardt after he learned that Harris refused to follow the Fee Dispute Committee's recommendation, because Hazlett commented on the merits of Gerhardt's claim and offered to help her.

Hazlett said in his letter to Gerhardt:

"I would strongly suggest that you obtain the services of an attorney to represent you in this matter regarding the appropriate amount of the fee. I believe you have a very good case. In addition, I would be willing to assist your new attorney in any way I can. It is my firm belief, under the facts of this case, that Mr. Harris is entitled to only $900.00 of the $4,000.00 he has in his possession."

Hazlett's comments to Gerhardt do not show that he represented her. Hazlett became involved in the fee dispute because of his unsuccessful attempt to resolve the matter without further disciplinary action being necessary. Those efforts did not place him in the role as counsel for either Harris or Gerhardt.

MRPC 3.7 prohibits a lawyer from acting as an advocate at a trial in which the lawyer is a material witness on a contested issue (other than legal services rendered in the case). Under MRPC 3.7, Diehl, not Hazlett, prosecuted this case. MRPC 3.7 does not prevent a deputy disciplinary administrator from prosecuting a case in which another deputy disciplinary administrator is a material witness.

*Chrispens* involved an appeal of an interlocutory order denying Coastal Refining & Mktg., Inc.'s motion to disqualify Chrispens' counsel under MRPC 1.9(a) (1996 Kan. Ct. R. Annot. 290) and MRPC 1.10(b). *Hoang* involved application of the conflict of interest rules, MRPC 1.7 (1996 Kan. Ct. R. Annot. 283), MRPC 1.9,

and MRPC 1.10, in the context of a criminal trial. Neither *Chrispens* nor *Hoang* is relevant.

Hazlett was not in a confidential relationship with either Harris or Gerhardt. Harris' conduct in connection with Hazlett's efforts to resolve the fee dispute were subject to the scrutiny of the Disciplinary Administrator, the panel, and this court. Rule 207 (1996 Kan. Ct. R. Annot. 205) imposes a duty on every attorney to aid in disciplinary investigations. Under Rule 207, all lawyers, including those subject to investigation, have a duty to cooperate with disciplinary authorities concerning an investigation. *In re Williamson,* 260 Kan. 568, 571, 918 P.2d 1302 (1996).

Harris contends Hazlett violated Rule 223 (1996 Kan. Ct. R. Annot. 242) by advising the insurance adjuster handling Gerhardt's personal injury claim that he believed Harris had violated the ethics rules and that a sanction was appropriate. Harris cites an exhibit to the deposition of Carrie Huffman, the American Family adjuster, in the civil case record, which was not provided to the panel.

Rule 223 deals with immunity. Harris fails to show how that rule applies in the context of this proceeding.

Harris argues that his hearing was flawed because of the undue weight the panel must have placed on Hazlett's testimony "by virtue of the closeness existing between Mr. Hazlett and the Panel." We do not agree. Under Harris' logic, whenever anyone from the Disciplinary Administrator's office testifies before a panel about respondent's conduct, the hearing is flawed, unless a special independent prosecutor is appointed. Harris had no objection to counsel presenting the complaint at the hearing.

Hazlett's contacts with Gerhardt and Harris and his testimony to the panel arose solely from his duties as a deputy disciplinary administrator in investigating Gerhardt's complaint and in attempting to resolve the matter.

## Recommended Sanction

In recommending published censure and restitution, the panel noted the presence of the following aggravating factors: (1) prior disciplinary offense—Harris already has a prior disciplinary offense for violating MRPC 1.16 in failing to refund amounts owed to a

client from his trust fund, which resulted in informal admonishment; (2) dishonest or selfish motive—Harris' conduct exhibited a selfish motive; (3) bad faith obstruction of disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency—Harris failed to abide by his agreement to have the Fee Dispute Committee resolve the matter; (4) refusal to acknowledge wrongful nature of conduct—Harris showed no remorse; (5) substantial experience in the practice of law—Harris graduated from law school in 1985; and (6) indifference to making restitution—Harris refuses to admit that restitution is owed.

The only mitigating factor that the panel noted was that Harris had offered in the civil case settlement conference to pay Gerhardt $2,700 of the $3,094. The panel took notice of the ABA Standards for Imposing Lawyer Sanctions (1991) and considered the four factors, the first being "whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession." See ABA/BNA Lawyers' Manual, p. 01:815. The panel found clear and convincing evidence that Harris violated a duty to his client and the legal profession by "removing disputed fee funds from his trustee account for his own use (MRPC 1.15)," among other violations.

In discussing the ABA Standards for Imposing Lawyer Sanctions, the ABA/BNA Lawyers' Manual states at p. 01:805:

"In determining the nature of the ethical duty violated, the standards assume that the most important ethical duties are those obligations which a lawyer owes to *clients*. These include:

(a) the duty of *loyalty* which (in terms of the Model Rules and Code of Professional Responsibility) includes the duties to: (i) preserve the property of a client [Rule 1.15/DR9-102]."

Standard 4.11 of the ABA Standards for Imposing Lawyer Sanctions states that disbarment is generally appropriate when the lawyer knowingly converts client property, causing injury to the client. Standard 4.12 provides that suspension is appropriate when a lawyer knows or should know that the lawyer is dealing improperly with client property and causes injury to the client. Standard 4.13 provides that reprimand is appropriate when a lawyer is negligent in dealing with client property and causes injury to the client. See

ABA Standards for Imposing Lawyer Sanctions, pp. 26-28; ABA/ BNA Lawyers' Manual, pp. 01:815-18.

Harris' conduct could be viewed as a wilful conversion of his client's property. First, after Hazlett negotiated an agreement between Harris and Gerhardt, Harris agreed to accept a $4,000 check from the insurance company made out to both himself and his former client. His former client endorsed the check with the understanding that Harris would place it in his trust account, pending resolution of the fee dispute by the Fee Dispute Committee. After Harris was unhappy with the committee's decision, he did not seek review of that determination. He kept the money, forcing his former client to sue him. Although he initially deposited the disputed funds with the clerk of the court, he spent them for his own purposes after summary judgment was entered against Gerhardt. The district court never adjudicated ownership of the funds, advising Harris in the court's order to retain the funds in his trust account.

Gerhardt was injured in that she lost $3,094 and has pursued litigation against Harris to recover her money.

### Harris' Prior Disciplinary Offense

In Harris' prior disciplinary offense, B5763, the complainant paid Harris a $75 retainer to represent him on a traffic ticket in Leavenworth Municipal Court. Harris failed to appear on two scheduled appearance dates. Harris eventually told the complainant to send him $146 to cover the fine, which the complainant did. Later, the complainant was notified that his driving privileges would be suspended if his fine was not paid. The complainant paid the fine and filed his disciplinary complaint against Harris. At the hearing before the panel on October 4, 1994, Harris offered to refund the $75 retainer and the $146 for the fine, which had been kept in Harris' trust account. Harris paid those funds to the complainant at the conclusion of the hearing. The panel found that Harris had violated MRPC 1.3 (1996 Kan. Ct. R. Annot. 264) (diligence), MRPC 1.4 (1996 Kan. Ct. R. Annot. 270) (communication), and MRPC 1.16 (declining or terminating representation) for failing to refund the items held in his trust account upon ter-

mination of representation. The panel's report was dated October 19, 1994.

## Recent Cases

Recent disciplinary cases involving a lawyer's misuse of trust account funds or mishandling of client funds are of interest.

In *In re Williamson*, 260 Kan. 568, the court imposed disbarment of Williamson for his failure to account for $83,481.42 in assets from an estate he had probated.

In *In re McIntosh*, 259 Kan. 532, 912 P.2d 182 (1996), (violation of MRPC 1.15[b] [1996 Kan. Ct. R. Annot. 302] and Rule 207 [1996 Kan. Ct. R. Annot. 205]) the court imposed published censure. In handling a personal injury case, McIntosh agreed to protect Kansas Farm Bureau's (KFB) PIP liens of $2,325.98 and $2,009.70 on the settlement proceeds. After cashing the settlement checks, McIntosh provided checks to KFB that were returned for insufficient funds. KFB eventually received its money, but not until 14 months had elapsed. Also, during a disciplinary investigation, McIntosh failed to provide requested financial information to the Disciplinary Administrator.

In *In re Krogh*, 259 Kan. 163, 910 P.2d 221 (1996), the court imposed published censure. Krogh delayed in forwarding PIP reimbursement to the insurance company, after providing insufficient fund checks. Krogh also commingled his office account and his trust account. The panel found mitigating circumstances, including family health and domestic problems, full cooperation, acceptance of responsibility, and remorse. Mishandling of client funds was attributable to Krogh's failure to properly maintain a separate trust account, and he had taken remedial action to correct that situation.

In *In re Jenkins*, 258 Kan. 779, 907 P.2d 825 (1995), the court imposed indefinite suspension for Jenkins' mishandling of client personal property delivered to the attorney during a divorce proceeding. Although some property was eventually turned over to the client's ex-spouse (the complainant), other items never were accounted for. Jenkins had numerous previous disciplinary com-

plaints filed against him. See *In re Jenkins*, 255 Kan. 797, 877 P.2d 423 (1994).

In *In re Seck*, 258 Kan. 530, 905 P.2d 122 (1995), although the panel recommended a 2-year suspension, the court imposed indefinite suspension. Seck, after receiving PIP reimbursement funds, holding $2,326.24 of those funds in his trust account, and assuring the insurance company entitled to them that he would remit them, spent portions of those funds for his own use. He ignored calls and letters from the insurance company. Eventually, the insurance company sued Seck and the client to recover the funds. Seck attempted to represent both himself and his client in the lawsuit, creating a conflict of interest, and filed counterclaims without consulting the client. After the client hired her own attorney, the case was settled, and Seck paid the funds. He admitted incompetence in handling PIP lien claims.

In *In re England*, 257 Kan. 312, 894 P.2d 177 (1995), the court imposed published censure against England who failed to turn over to his client after termination 363 checks with face values totaling $19,514 that he was attempting to collect for the client. Repeated requests had been made. After the disciplinary investigation started, England turned over the checks in his possession and $882.78 in his trust account. Forty checks remained unaccounted for, but no restitution was sought for them. England, a recent law school graduate, accepted responsibility and apologized.

In *In re Waite*, 256 Kan. 130, 883 P.2d 1176 (1994), the court suspended imposition of discipline and ordered 2 years' supervised probation against Waite, who mishandled a $3,000 estate which consisted solely of a check that he had deposited in his trust account. The account balance dipped below $3,000 on several occasions, and Waite failed to keep the heirs informed of the case status and did not return calls and correspondence. He had previously been disciplined by published censure. See *In re Waite*, 237 Kan. 626, 702 P.2d 1381 (1985).

In *In re Jancich*, 255 Kan. 787, 877 P.2d 417 (1994), the court imposed indefinite suspension. The client gave Jancich a check for $7,500, to be deposited in his trust account. Jancich deposited it in his business account, claiming he later asked the client if he

could borrow the money, to be repaid at $500 per month, and the client agreed. The client denied the loan transaction. Jancich repaid part of the money, but still owed $4,500, despite repeated requests for payment.

In view of recent disciplinary cases and the applicable ABA Standards for Imposing Lawyer Sanctions, published censure is too lenient a sanction here.

IT IS THE ORDER OF THE COURT that imposition of discipline against respondent Kevin C. Harris be suspended, and respondent is placed on probation for the period of 2 years from this date on the terms and conditions hereinafter set out:

1. Respondent shall make restitution by paying the insurance settlement proceeds of $3,094 to complainant Debbie Gerhardt as recommended by the panel. Payment shall be delivered to the Disciplinary Administrator within 45 days from this date for transmittal to Gerhardt. The Disciplinary Administrator shall report to this court within 60 days from this date whether respondent has made payment.

2. Respondent shall pay to complainant Debbie Gerhardt an amount of reasonable attorney fees, yet to be determined, to make her whole for monetary loss resulting from his MRPC violations. The Disciplinary Administrator shall attempt to secure from Gerhardt her affidavit stating any costs incurred and amounts paid or agreed to be paid to counsel for representation in *Gerhardt v. Harris*, 261 Kan. 1007, in attempting to recover the $3,094. Her affidavit shall be supported by documentation of costs and payments, and by a copy of any fee agreement. The original with seven copies is to be filed by the Disciplinary Administrator with the clerk of this court with a copy mailed to respondent. Respondent shall have 23 days from the date of mailing to object or otherwise respond to this court.

After expiration of the 23-day period, the court will review the respective submissions and decide the amount of attorney fees and accompanying costs, if any, to be assessed against respondent to be paid to Gerhardt.

3. Respondent shall not violate the MRPC.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to him, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.