No. 89,373

In the Matter of DAVID L. POLSLEY, *Respondent.*

61 P.3d 715

Opinion filed January 24, 2003.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

The respondent did not appear.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against David L. Polsley, an attorney admitted to the practice of law in Kansas whose last registered office address is Kansas City.

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys wherein respondent appeared pro se. The panel concluded respondent had violated KRPC 1.1 (competent representation to client) (2002 Kan. Ct. R. Annot. 316); 3.1 (meritorious claims and contentions) (2002 Kan. Ct. R. Annot. 406); 8.4(d) (misconduct prejudicial to the administration of justice) (2002 Kan. Ct. R. Annot. 449); 8.4(g) (misconduct adversely reflecting on fitness to practice law) Supreme Court Rule 211(b) (untimely answer to the formal complaint) (2002 Kan. Ct. R. Annot. 260).

The violations herein come at the end of years of assorted litigation with a complex factual history of changing counsel and litigants. It is appealing to attempt to summarize many of the panel's findings of fact and thereby shorten this opinion. This is especially true as no exceptions have been filed. However, upon reflection, it would be extremely difficult to fully understand the violations found herein without inclusion of the panel's findings upon which its conclusions are based.

"FINDINGS OF FACT

. . . .

"2.   On September 29, 1993, Nancy E. Green filed a Petition for divorce from Brion S. Foster. At that same time, Ms. Green sought and obtained a temporary

restraining order. The order required Mr. Foster to refrain from coming on or about the marital residence, located in Prairie Village, Kansas. Additionally, the order required all of Mr. Foster's firearms to be placed in the exclusive custody of Ms. Green.

"3.  On that same day, officers from the Prairie Village, Kansas, police department served Mr. Foster with a copy of the order and escorted Mr. Foster from the marital residence. After being provided with evidence of ownership, the officers allowed Mr. Foster to retain the possession of one unloaded handgun.

"4.  On October 9, 1993, Mr. Foster broke a basement window and entered the marital residence. Mr. Foster [lay] in wait for Ms. Green to return home.

"5.  Later that day, Ms. Green, Dean Blevins (Ms. Green's boyfriend), and A.J. Bair (Ms. Green's two-year-old grandson) returned to the residence. Mr. Foster, hiding in a bedroom, revealed himself and shot and killed Ms. Green. According to the autopsy report, Ms. Green died instantly.

"6.  When questioned by law enforcement officers, Mr. Foster confessed that he broke into the house, obtained one of several guns he stored in the house, waited for Ms. Green to return home, and shot and killed her. The statement made by Mr. Foster to the law enforcement officers is the only evidence regarding the gun used to kill Ms. Green. There was no evidence that the gun the Prairie Village, Kansas, police officers allowed Mr. Foster to retain on September 29, 1993, was the gun used to kill Ms. Green.

"7.  Ms. Green died intestate. Jerry Wooten, a paralegal and friend [of] Ms. Green's family, was appointed as Administrator of her Estate. At the time of her death, Ms. Green's legal spouse was Mr. Foster and Ms. Green had one child, Jo Anne Bair. Mr. Foster later entered a plea of guilty to the charge of first degree murder. Thereafter, the probate court entered an order finding that Mr. Foster voluntarily waived any claim against Ms. Green's Estate by operation of the common law and the applicable statutory provisions. There is no evidence that Ms. Green had any heirs other than Ms. Bair.

"8.  On October 20, 1993, Ms. Bair, through counsel, Shawn DeGraff, filed a claim for wrongful death against Mr. Foster, in the death of Ms. Green, Johnson County District Court case numbered 93C11646. Default judgment was entered against Mr. Foster. That default judgment became a final judgment.

"9.  Thereafter, on September 28, 1994, a second civil suit was filed regarding the death of Ms. Green. The plaintiffs were listed as 'The Estate of Nancy E. Green, Jo Anne Bair, and A.J. Bair, by and through his Guardian and Next Friend.' The defendants included 'The City of Prairie Village, Kansas, Chief of Police Charles Grover, Corporal Steve Hunter, [and] Officer James C. Moyers.' The claims sounded in negligence, and included a survival action by the Estate, a wrongful death action by Ms. Bair, and a bystander claim by A.J. Bair. The petition was prepared and submitted by Shawn E. DeGraff, P.A. Additionally, the petition was signed by Mr. DeGraff. However, under Mr. DeGraff's name, Mr. Lawhorn's name was also listed as an attorney for the plaintiffs.

"10.  After being notified that the Estate desired that he withdraw, Mr. DeGraff withdrew from his representation of the plaintiffs. Thereafter, Philip A. Burdick of Burdick, Gernon & Lippert, referred Ms. Bair to Gordon M. Rock, Jr. Mr. Rock was retained to represent the plaintiffs in the case against the City of Prairie Village, *et al.* Mr. Rock entered into a contract for legal services with Ms. Bair and Mr. Wooten. On November 13, 1996, Mr. Rock formally entered his appearance.

"11.  On December 19, 1996, without receiving permission from Mr. Wooten (the administrator of the Estate) or Mr. Lawhorn or the Respondent (the attorneys for the Estate) and in direct contravention with the contract for legal services, Mr. Rock dismissed the Estate's survival action. Mr. Rock dismissed the Estate's survival action because, notwithstanding Mr. Blevins' observations, there was no medical evidence that Ms. Green's death was anything other than instantaneous.

"12.  Thereafter, on December 24, 1996, with the express permission of Ms. Bair, Mr. Rock settled the remaining claims against the City of Prairie Village, *et al.,* for a confidential sum.

"13.  Mr. Rock disbursed the settlement proceeds. In disbursing the settlement proceeds, Mr. Rock reimbursed Mr. DeGraff for expenses and paid the attorney fees Mr. DeGraff incurred in the litigation. At the time Mr. Rock forwarded the checks to Mr. DeGraff, Mr. Rock sent a letter to Mr. Polsley informing him of the payments made to Mr. DeGraff.

"14.  In March, 1997, Mr. Wooten called Mr. Rock to find out the status of the litigation. At that time, Mr. Rock informed Mr. Wooten that the case had been settled in December, 1996. Mr. Rock informed Mr. Wooten that the survival claim by the Estate had been dismissed, because there was no medical evidence that Ms. Green had incurred any pain or suffering. Mr. Rock also informed Mr. Wooten that the settlement was confidential and that the settlement proceeds had been disbursed.

"15.  Mr. Wooten then called Ms. Bair and learned from her the amount of the confidential settlement. Mr. Wooten contacted Mr. Polsley and informed him of the dismissal and settlement, including the amount of the confidential settlement.

"16.  On April 20, 1997, by filing a motion, Mr. Lawhorn and the Respondent attempted to revive the litigation in behalf of the Estate filed against the City of Prairie Village, *et al.* The parties provided the court with briefs on the issues. After a hearing on the matter, the court denied Mr. Lawhorn and the Respondent the relief they were seeking.

"17.  On June 6, 1997, Mr. Lawhorn and the Respondent filed a civil action captioned, 'The Estate of Nancy E. Green, Plaintiff, vs. Gordon M. Rock, Jr., Philip A. Burdick, and Jo Anne Bair, Defendants.' Later, Mr. Burdick's law firm (Gernon, Burdick & Lippert) was also included as a party plaintiff. The claims against the attorneys were basically claims of malpractice. The claim against Ms. Bair was based upon a 'constructive trust' theory. At some point, Mr. Lawhorn and the Respondent were prevailed upon to dismiss the Estate's claim filed against

the Estate's only heir, Ms. Bair. Additionally, the Estate also dismissed its claims against Mr. Burdick and his law firm.

"18.    Thereafter, Mr. Rock filed a motion for summary judgment. In granting Mr. Rock's motion, the court found as follows:

'There is little doubt in this Court's mind that Mr. Rock owed the Estate a duty to discuss the settlement with Mr. Wooten before agreeing to the settlement. This is especially true since the terms of the settlement required the dismissal of the Estate's one and only claim in this case. There is also no doubt that Mr. Rock breached that duty, and that the breach constituted negligence.

'It should be noted at this point that the Court is mindful of the Estate's arguments regarding its other theories for recovery, including breach of contract and breach of fiduciary duty, but the Court is of the opinion that under the explanation given in *Bowman v. Doherty* this is a negligence action. The duty that Mr. Rock breached, i.e., the duty to confer with his client about the settlement proposal, is a duty imposed by law, and the Estate's action is one sounding in negligence. The motion for summary judgment is decided based upon the Court's ruling that this is a tort action.

'Regardless of his breach, however, the plaintiff has completely failed to come forward with any evidence of damages that resulted from the breach. In order to prove that the Estate suffered any damages, the plaintiff would essentially have to prove that it would have prevailed on its underlying case, and the Estate is lacking in essential evidence in this regard. The only evidence in the record is that the gun that Mr. Foster used to kill Nancy Green was not the same one that Prairie Village police officers allowed him to remove from the home on September 29, 1993. The only evidence in this regard comes from his confession that he broke into the house the evening of October 9, 1993, obtained a gun from the collection of guns that Ms. Green had stored in the basement of the house, and used that gun to shoot her. Without evidence that the Prairie Village Police Department put the means that Mr. Foster used to kill Ms. Green into his hands, Prairie Village has no liability for the unfortunate events of the evening of October 9, 1993.

'Plaintiff's case also suffers from another serious weakness, and that is proof of any conscious pain and suffering that Ms. Green experienced. The Court recognizes that the Estate has some evidence of her conscious pain and suffering in the testimony of Mr. Blevins, and the Court further recognizes that its function at this stage of the proceedings is not to weigh the evidence of Mr. Blevins against the evidence of the medical examiners. However, this weakness is a factor in the truly fatal flaw of the plaintiff's case: its failure to name an expert.

'This case is not one in which the bad results are so readily apparent to the layperson that a jury could make a reasoned evaluation of plaintiff's complaint against Mr. Rock without expert testimony. Without an attorney to evaluate the Estate's chances to succeed in the underlying case, the Estate could not make a submissible case. Without expert testimony, Mr. Rock's failure to com-

municate more clearly with the Estate's Administrator is nothing more than "negligence in the air," as one court described negligence that simply was not the proximate cause of the damages suffered by the plaintiff. *See, Lay v. Kansas Dept. of Transportation*, 23 Kan. App. 2d 211, 217, 928 P.2d 920 (1996), *rev. denied* 261 Kan. 1085 (1997).

'In addition to the above discussed weaknesses of plaintiff's case (i.e., weak evidence of conscious pain and suffering and no evidence that Prairie Village police were a proximate cause of Ms. Green's death) plaintiff's case has another potential flaw that would require the testimony of an expert to overcome: the fact that the Estate had previously brought and settled a suit for the exact same damages (Ms. Green's death). Kansas case law recognizes a "one-action rule," as stated in the case of *Mick v. Mani*, 244 Kan. 81, 766 P.2d 147 (1988). Although review of *Mick v. Mani* reveals that it is not on all fours with this case, because in that case the first suit was resolved by an actual jury verdict rather than a default judgment, and in that case plaintiff was alleging negligence actions against both defendants, this case might well serve as the factual scenario for the appellate courts to extend the "one-action rule" beyond the parameters of *Mick v. Mani*.

'In addition, under the particular facts of this case, the Court finds that plaintiff would have to present expert evidence that the Estate suffered actual damages for its case to be presented to a jury. In this case, it is uncontroverted that the Estate had sufficient assets to pay all of its creditors, and Jo Anne Bair was the only heir eligible to inherit from her mother's estate. The plaintiff argues that the Estate has not been formally closed by the Probate Court and therefore there has been no final determination of descent; however, plaintiff has produced absolutely no evidence that Nancy Green left any heirs except her daughter, Jo Anne Bair. Therefore, any monies that flowed into the Estate would flow through to Ms. Bair, there being no unpaid creditors and no other eligible heirs. Under these circumstances the Court finds that plaintiffs would be required to present expert testimony to support its theory that the Estate suffered any damages.

'The myriad of technical legal issues that the jury would have to resolve in determining whether Mr. Rock's negligence was the proximate cause of any loss to the Estate compel the Court to find that expert legal testimony would be required. The jury could not evaluate his performance of his duties without the assistance of an expert. Plaintiff's failure to name an expert is fatal to its case, and Mr. Rock is entitled to summary judgment.'

"19. Following summary judgment, Mr. Rock filed a motion for sanctions. In a March 16, 1999, memorandum opinion, the court found as follows:

'. . . The fact that the Estate would file suit against its only heir is, in this Court's opinion, illustrative of the real nature of this lawsuit. The Estate sued Ms. Bair on a theory of constructive trust. In other words, they were trying to compel Ms. Bair to pay monies that she had received for her wrongful death claim into the Estate, and then the monies would have to be disbursed back

to her, as she was the only heir of the Estate, minus any attorney fees that might be paid out to the attorneys representing the Estate. The attorneys representing the Estate were, of course Mr. Lawhorn and [the Respondent].

'The Court specifically finds that the petition in the case at hand was filed in bad faith. The Court finds that it was filed without evidentiary support and that the attorneys filing it had knowledge that they were not likely to develop any evidentiary support for their claims. Further, Mr. Lawhorn and [the Respondent], who signed the petition, knew or should have known that their claims were not warranted by existing law and that there was no nonfrivolous argument for the extension, modification or reversal of existing law.

. . . .

'The total lack of effort on the part of Mr. Lawhorn and [the Respondent] to establish a factual basis for their suit by naming witnesses is appalling.

. . . .

'. . . [T]he Court has a clear recollection of asking Mr. Lawhorn sometime last summer when he intended to name an expert, as his deadline for doing so had passed. Mr. Lawhorn advised this Court that he did not [intend] to do so, and the Court warned Mr. Lawhorn that his decision was fraught with risk.

'In other words, Mr. Lawhorn and [the Respondent] were told by two reputable attorneys and by this Court on multiple occasions that they were pursuing a case that appeared to have no basis in the law or in fact, and they persisted in maintaining their course of action. . . .'

Mr. Rock requested that sanctions be ordered in the amount of $63,585 for attorney fees Mr. Rock paid to his lawyer. The court granted the motion for sanctions, but ordered Mr. Wooten's bond and Mr. Lawhorn and the Respondent to pay a total of $50,000.

"20.    Mr. Wooten's bond was in the amount of $12,500 and that amount was paid to Mr. Rock. Thereafter, Mr. Rock settled his claim against the Respondent after the Respondent paid Mr. Rock $6,000. Additionally, Mr. Rock settled his claim against Mr. Lawhorn after Mr. Lawhorn paid Mr. Rock $6,000."

Based upon the above findings of fact, the hearing panel concluded as follows:

## "CONCLUSIONS OF LAW

"1.    Kan. Sup. Ct. R. 202 details the 'grounds for discipline,' in pertinent part, as follows:

'A certificate of a conviction of an attorney for any crime or of a civil judgment based on clear and convincing evidence shall be conclusive evidence of the commission of that crime or civil wrong in any disciplinary proceeding instituted against said attorney based upon the conviction or judgment. A diversion agreement, for the purposes of any disciplinary proceeding, shall be deemed a conviction of the crimes originally charged. **All other civil judgments shall be prima facie evidence of the findings made therein and shall raise a presumption as to their validity.** The burden shall be on the respondent to disprove the findings made in the civil judgment.'

In this case, the district court entered two memorandum opinions. Pursuant to Kan. Sup. Ct. R. 202, the civil judgments entered by the district court 'raise a presumption as to their validity.' While the Respondent, in this case, attempted to challenge the findings made by the district court, the Respondent failed to disprove the findings made in the memorandum opinions. As such, the Hearing Panel accepts the findings contained in the memorandum opinions and incorporates them by reference.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' In this case, the Respondent failed to competently represent the Estate of Nancy E. Green when he sued the Estate's only heir and when he filed and prosecuted the legal malpractice case against Mr. Rock, Mr. Burdick, and Mr. Burdick's law firm.

"3.   Frivolous claims and proceedings are prohibited by KRPC 3.1. That rule provides, in pertinent part, as follows:

'A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . .'

The Hearing Panel concludes that the litigation filed by the Respondent against Ms. Bair, Mr. Rock, Mr. Burdick, and Mr. Burdick's law firm was frivolous and did not include a good faith argument for an extension, modification, or reversal of existing law. As a result, the Hearing Panel concludes that the Respondent violated KRPC 3.1.

"4.   KRPC 8.4 provides, in pertinent part, as follows:

'It is professional misconduct for a lawyer to:

. . . .

(d)   engage in conduct that is prejudicial to the administration of justice;

. . . .

(g)   engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

The Respondent engaged in conduct that was 'prejudicial to the administration of justice' when he filed a frivolous law suit against Ms. Bair, Mr. Rock, Mr. Burdick, and Mr. Burdick's law firm. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d). In addition, filing suit against Ms. Bair, the sole heir of the Estate of Ms. Green for the purpose of obtaining an attorney fee adversely reflects on the Respondent's ability to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

"5.   Kan. Sup. Ct. R. 211(b) provides, in pertinent part:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

The Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint in a timely manner."

The hearing panel then recommended as follows:

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent legal representation and his duty to the legal system to avoid abusing the system.

"*Mental State.* The Respondent negligently violated his duty to his client to provide competent legal representation and his duty to the legal system to avoid abusing the system.

"*Injury.* As a result of the Respondent's misconduct, the legal system was negatively impacted. Additionally, Ms. Bair and Mr. Rock incurred substantial legal fees in defending the lawsuit filed against them.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. In 1999, the Respondent was informally admonished for having violated KRPC 4.2 (communication with a person represented by counsel). While the discipline is recent, it is not of a similar character to the misconduct committed in this case.

"Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent failed to timely file an Answer to the Formal Complaint.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent maintains that he did not engage in any misconduct in this case. As such, the Respondent has refused to acknowledge the wrongful nature of his conduct.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1981. At the time the Respondent committed the misconduct, the Respondent had been practicing law for sixteen years. As such, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Imposition of Other Penalties or Sanctions. The Respondent has paid $6,000 in sanctions to Mr. Rock for filing and prosecuting the legal malpractice case.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.53, which provides that '[r]eprimand is generally appropriate when a lawyer: . . . (b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.' In this case, the Respondent was negligent in determining whether he was competent to handle the Estate case and the legal malpractice matter. As such, according to the Standards, reprimand, or censure as it is described in Kansas appears to be the appropriate sanction in this case.

"The Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260); *In re Harris*, 261 Kan. 1063, 1066, 934 P.2d 965 (1997). A hearing panel's report is deemed admitted under Rule 212(c) and (d) (2002 Kan. Ct. R. Annot. 266) when a respondent fails to file exceptions. *In re Howlett*, 266 Kan. 401, 969 P.2d 890 (1998); accord *In re Juhnke*, 273 Kan. 162, 41 P.3d 855 (2002). As previously noted, respondent has filed no exceptions herein. We adopt the panel's findings of fact and conclusions of law.

As to the appropriate discipline to be imposed herein, we accept the panel's recommended discipline as appropriate.   .

IT IS THEREFORE ORDERED that the respondent, David L. Polsley, be censured in accordance with Supreme Court Rule 203(a)(3) (2002 Kan. Ct. R. Annot. 224) for the violations found herein.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.